## City of Covington et al. v. State Tax Commission et al.
## State Tax Commission et al. v. City of Covington et al.

(Decided Dec. 21, 1934.)

S. L. BLAKELY for City of Covington.

MARK BEAUCHAMP and JOHN L. WOODBURY for City of Louisville.

TRABUE, DOOLAN, HELM & HELM for Peaslee-Gaulbert Co.

GROVER G. SALES and HOWARD B. LEE for Family Service Organization.

BURKE & LAWTON for Nazareth Literary and Benevolent Institution and Roman Catholic Bishop of the Diocese of Louisville.

B. P. WOOTTON, Attorney General, and S. H. BROWN and H. H. RICE, Assistant Attorneys General, for State Tax Commission.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming in part and reversing in part.

The General Assembly of this commonwealth at its Extra Session, 1934, enacted chapter 25 of the published acts of that session, and which are now sections 4281v-1 to and including 4281v-19 of the 1934 Special Legislative Issue of the Supplement to Carroll's Kentucky Statutes. This litigation was begun by the filing of a declaratory judgment action in the Franklin circuit court by the city of Covington against the members of the State Tax Commission and Honorable Bailey P. Wootton, Attorney General of the commonwealth, seeking an interpretation of the statute and to have it adjudged that municipalities in the commonwealth, of which the plaintiff was one, were exempt from the payment of the 3 per cent. tax that the statute prescribed should be collected upon the receipts from all retail sales of certain commodities, except such as were expressly exempt by the terms of the act or by constitutional provisions. After the action was filed, various other municipalities of different classifications filed their intervening petitions, and on their motions became parties thereto, and in which the same contention was made and the same relief asked as was done in the petition of the city of Covington. Representative charitable institutions also intervened and sought a declaration of their rights, as well as immunity of themselves from the tax imposed by the statute. Likewise,

representative educational institutions filed their intervening petitions asking the same relief, and some retail merchants also came into the case in the same manner and sought the same interpretative relief; they contending, however, that the tax was not one imposed upon the seller, which if true would make him liable for the levied 3 per cent. on the gross amount of sales when made to a buyer or purchaser who, under the law, constitutional or otherwise, is exempted from the payment of the tax. The intervening charitable, educational, and eleemosynary institutions claimed absolute exemption from the payment of the tax in any and all events, not only under the provisions of section 170 of our Constitution, but also under the interpretation of the exemptions contained in section 5 of the act, which we will later insert with our interpretation thereof. It will, therefore, appear that all classes of persons, corporations, and institutions affected by the act are parties to the action; each representative litigant appearing not only for itself but for and on behalf of others belonging to the same class.

The issues were made by demurrers and motions and some pleadings, following the initial ones, and upon final submission the court pursuant to a written opinion, adjuged: (1) That sales to municipalities as such are not exempt from the provisions of the act and must be paid by the purchaser to the seller as therein specified; (2) that all merchants and sellers in sales that are taxed by the act must add to his selling price the 3 per cent. burden imposed by the act and collect it from the purchaser either at the time of making the sale or when the account is collected if the sale was made on time, and that he (seller or merchant) is not liable for the 3 per cent. assessment, unless he makes the collection thereof from the purchaser, and which automatically exempts him from 'accounting to the tax gathering authority for any part of the 3 per cent. levy on sales made to purchasers who by law are exempt from the payment of the assessment; (3) that sales *to* municipalities for the exclusive use and benefit of educational or charitable purposes under their control, and that sales made directly to such educational and charitable institutions, ''are exempt from the provisions of the Act,'' and that the seller is not required to collect from them any of the levied tax, nor to account therefor to the state taxing authority in the settlements he is required to make with it; (4)

that educational and charitable institutions when engaged in *making* the character of sales described in the statute are likewise exempt from collecting the tax on any of them from its customers, or the one or ones to whom such sales are made, and as a consequence they are exempt from reporting to the State Tax Commission any such sales made by them or from paying any part of the tax; and (5) that municipalities selling any of the tax commodities are not exempted from collecting and accounting for the tax but must do so the same as in sales by private individuals. All parties to the litigation prayed and were granted appeals to this court, and the record has been brought here under the double caption that we have indicated in the styling of the case.

Preliminary to taking up for consideration the various subdivisions of the judgment that we have pointed out, it is appropriate at this point to observe that the fundamental rule for the interpretation of statutes is to declare and administer the intent of the Legislature in enacting it, and which is to be gathered from all parts of the statute and from all of the language employed in it, whether conflicting or otherwise, and to give it the interpretation that such comprehensive view clearly indicates was the legislative intention. However, in applying such fundamental rule the express terms employed in the statute should not always be strictly or literally followed when the general import of the statute, and the clear purpose that the Legislature had in view in enacting it, demonstrate beyond controversy that such express terms, though possessing an ordinary and well understood meaning, should not be literally accepted. In other words, the rule is that a Legislature is forbidden to designate and expressly name in a statute a particular purpose or intention as motivating it when the language of the statute as a whole clearly, unerringly, and unmistakably portrays a different purpose and intention. A contrary rule would authorize it to incorporate in a statute descriptive terms and declared purposes, when the statute itself, read as a whole, prescribed for wholly different ones than those so falsely expressed.

An illustration of what we are endeavoring to declare is found in the case of City of Lexington v. Thompson, 250 Ky. 96, 61 S. W. (2d) 1092. In that case the Legislature in enacting the statute there involved expressly stated that the public functionary that

it created should not be classified as an "officer," although it clothed him with every known power and characteristic of one, and which we in that case held him to be, notwithstanding the Legislature had enacted that he was not, nor could he be considered as one. The rule under consideration is thus stated in the text in 25 R. C. L. p. 1008, sec. 247: "The court may not, in order to give effect to particular words, virtually destroy the meaning of the entire context; that is, give the particular words a significance which would be clearly repugnant to the statute, looked at as a whole, and destructive of it obvious intent." The case of Van Dyke v. Cordova Copper Co., 234 U. S. 188, 34 S. Ct. 884, 58 L. Ed. 1273, is cited in support of that statement, and numerous are the opinions and text-writers declaring the rule to be that a statute should be interpreted as indicated by all of its parts, rather than as indicated (or even exprssed) in one or more particular parts thereof, and which, after all, is but another way of saying that a Legislature may not nullify the clearly expressed import and purpose of a statute by expressing therein a contrary one, a homely illustration of which is that a statute regulating the ownership of dogs could not be made to apply to the ownership of automobiles by the mere ipse dixit of the Legislature that it was so intended. See, also, the text in 59 C. J. 960. Having said this much, we will now proceed to a consideration of the statute, and the various interpretations insisted on as well as those that the trial court put upon it.

The first part of the act is taken up with the definition of terms. Then follows a recitation of the commodities the sale of which is taxed and the sale of each of which according to the literal language employed, is "imposed" on the sellers thereof, all of which appears in the various subdivisions of section 3 of the act, it being divided into section 3a, 3b, and 3c; but it is distinctly prescribed in each of the subsections that the seller "is required to collect the tax from the purchaser" of the commodity taxed. Other and later provisions impose the duty on him (seller) to make periodical reports to the State Tax Commission of the amount of his gross receipts since the last report with the taxes collected from and paid by the various purchasers and to pay into the treasury through the Tax Commission that amount. By section 4 of the act he is given the right to deduct from the amount of tax so

collected from his purchasers 3 per cent. as compensation for his services in collecting it. In defining "gross receipts" upon which the tax is exclusively levied, the words are restricted to sales for which the seller has received the consideration, either at the time of making the sale, or by payment of accounts of his customers to whom he extended credit. In other words, no tax is collectable from the merchant or seller until he collects the price of the commodity that he sells while engaged in the activity in which the sale was made. From that provision alone it would seem to appear that the clear import of the statute, and also the legislative intent, is and was to make the merchant or seller only a collector of the tax from his customers, since there would be no logic in postponing payment of the tax until he collected the amount of his sales (whether for cash or on credit) if the tax is in reality imposed on him as a "seller" with no right to ever collect it from the buyer, nor would it hardly comport with universal methods of tax levying statutes to make the taxpayer the collector of the assessed tax from himself, and to remunerate him therefor. While such a method might not be inhibited, yet it is a radical departure from the usually provided ones.

It is argued, however, by the State Tax Commission in support of its contention that the tax is primarily assessed against the seller, that the Legislature meant by the phrase, "and/or account to the State of Kentucky for such tax," to prescribe that he should turn over to the state all of the taxes that he was required to and did collect from his customers or purchasers, as well as 3 per cent. on sales that the purchaser might be exempt from paying, and which, of course, the seller had not collected nor could collect from him. At first blush there might be slight room for that interpretation; but, when the entire statute is examined and considered, whereby the purpose and intention of the Legislature are clearly unfolded, it becomes convincingly apparent that the phrase, "or account to the State of Kentucky for such tax," was inserted to circumvent any collusiveness on the part of the seller as collector, whereby the commonwealth would be deprived of its revenue because of his failure to perform his duty as collector thereof, and also to prevent him *as seller* from absorbing the tax by enhancing his selling price and to thereby exonerate his customer from paying it as pre-

scribed by the statute. That interpretation is fortified by the last paragraph of section 7 of the act making it "unlawful for any person to advertise, either orally or in writing, that he is paying said taxes from any source other than the receipts of his business," and that "it shall be unlawful to advertise any article or service taxable hereunder as being sold free of the tax herein imposed."

Again, and in further fortification of that conclusion, the same section of the act, investing the State Tax Commission with the power to promulgate rules and regulations for carrying it into effect, expressly requires that such rules and regulations "shall set forth the manner whereby the taxes shall be added to the retail price of the various articles, commodities or services" that are taxed by the act, and the commission has promulgated its rule 23 wherein it prescribed for the carrying out of that provision of the statute, and in which it said: "While the Tax Commission will look to the merchant or seller for the tax, the law contemplates that the tax will be passed on to the consumer in some manner, and the Commission is charged with the duty of prescribing the method by which the merchant or seller shall pass the tax on to and collect the same from the purchaser. The Commission has tentatively consented to the use of the bracket system of collecting the tax, and has provided the following table as the basis for collections."

In the light of such requirements contained in the act, as expressed and embodied in such plain and unambiguous language, there would appear to be no room for the theory that the tax is primarily one levied on the *business of selling* the taxed commodities, notwithstanding the levying sections would appear to so indicate, since under the rule supra the statute should be interpreted in the light of what the Legislature unmistakably provided for therein, rather than on expressions found in it indicating a contrary purpose. That being true, the trial court properly interpreted the statute (though not so stated in express terms) as imposing the tax on the purchaser of the taxed articles by requiring the seller to add the amount thereof to the purchase price, and in turn, making the latter the collector of the tax from the purchaser.

The conclusions we have reached and so far expressed are also authorized and justified from the his-

tory of the statute under consideration from the time of its introduction in the Legislature until it was finally enacted in its present form, and which it is competent for courts to consider in construing statutes containing apparently ambiguous language, as will be seen from the following excerpt taken from the text in 59 C. J. 1017, sec. 605, saying: "To determine the legislative intent in case of ambiguity resort may be had to the history of the statute and of the proceedings attending its actual passage through the legislature as disclosed by the legislative journals." Many cases from as many courts are cited as supporting that text, and our investigation discloses that the rule therein stated is not only of practically universal application, but is likewise one of clarifying value and productive of correct results. Applying it in this case, we find that it is admitted in briefs, and shown by the journal of the two Houses of the General Assembly, that the statute when first introduced was essentially one imposing the tax levied by it on the *merchant* or *seller,* and which is shown by the unamended section 3 and its various subsections. After the introduction of the act, various groups and organizations opposing its enactment appeared before the two legislative bodies, and to alleviate their objections the act was amended in several particulars, prominent among which was a shifting of the burden of paying the tax from the *merchant* or *seller* to the *consumer* or *buyer,* and which was accomplished by the amendatory provisions we have hereinbefore discussed. In this manner the statute as passed was turned around, so to speak, from the position it occupied when introduced but without amending some of its sections or parts so as to harmonize with the newly assumed positions, and which produced the ambiguities encountered.

The construction we have so far given the statute simplifies, as well as answers, some of the other questions and contentions made by respective counsel. It also reveals an error of the trial court in holding that sales by educational, eleemosynary, and charitable institutions when engaged in activities of merchant or seller of any of the taxed commodities, are exempt from the tax and exonerating them from the duty of collecting it from their customers and accounting for it to the state taxing authorities, since there is no provision of law, constitutional or otherwise, against making such institutions collectors of excise taxes growing out of

transactions in which they may lawfully engage. The constitutional exemption of such institutions as contained in section 170 of our Constitution as primary burden bearers of taxes was upheld and enforced by us in the case of Corbin Y. M. C. A. v. Commonwealth, 181 Ky. 384, 205 S. W. 388, 390, 1 A. L. R. 264. In that case the contested tax was an occupational one and levied upon the charitable institution as a seller or *merchant* engaged in the business that was taxed, and we held that the section of the Constitution referred to expressly exempted it therefrom because of the fact that it was an "institution of purely public charity," but which clearly does not operate to exempt them from serving as tax *collectors.*

Other exemptions in that section are limited to taxation of "public *property* used for public purposes" and to "*places* actually used for religious worship," etc. But with reference to exemptions of charitable and educational organizations the language is broad enough to include all kinds of taxes exacted from such institutions; whereas, we have held in a number of cases, one of which is City of Louisville v. Cromwell, 233 Ky. 828, 27 S. W. (2d) 377, that the exemptions of "public property" and "places" made in that section refers only to exemption from payment of ad valorem taxes and not to the class known as "excise" taxes. Therefore, the tax now under consideration, not being exacted or demandable of the seller until after he collects it from his purchaser, is clearly not exempted by that section (170) of our fundamental law.

But it is insisted that the language of the statute itself is insufficient to embrace municipalities, or charitable and educational institutions when engaged in the business or activity of merchants or sellers of the commodities taxed. That position is put forward because it is argued that the word "person" does not embrace municipal corporations, or the other institutions referred to, and therefore none of them may be made to account for the tax, nor are they required to collect it from their purchasers in transactions that they may make as sellers or merchants. As a general rule such contention is sustained by text-writers and opinions, but there are well-recognized exceptions thereto, one of which is that if the entire provisions of the statute being construed indicate that municipalities and other institutions were intended to be embraced, then courts should give

the statute that construction, and it is argued that the definition given in the statute is itself broad enough to embrace them. The act under consideration (section 2) defines "merchant" as "a person regularly engaged in the vending of tangible personal property." It then defines the word "person" as "including any individual, co-partnership, association, corporation, trust or other form of business organization, regardless of whether or not enumerated here and regardless of whether or not similar to those enumerated."

The clearly indicated purpose of the Legislature in employing that language is that it intended to embrace all sellers engaging in the sale transactions upon which the tax was levied, regardless of their particular classification, unless they were expressly exempted by other portions of the statute, or by some constitutional provisions, and which is manifested in this case by section 5 of the act, saying: "Every charitable and educational institution in the State of Kentucky and institutions thereof when engaged in activities made taxable by this act shall be completely exempt from its provisions." The *activity* "made taxable by this act," as we have seen, is not that of merchant or seller, but that the tax is imposed upon the *transaction* of sale and is chargeable to the buyer, though to be collected and accounted for by the merchant or seller for the compensation fixed by the statute; so that the exemption therein provided for applies to such institutions (therein named) only as *purchasers* and not as *sellers*. The inserted section of the act exonerated the institution therein named (including the state itself) from the burden of eventual payor of the tax levied by the act, and when that was shifted from the seller to the purchaser the former is not the burden bearer of the tax, and becomes such only as a purchaser, who, unless exempt therefrom, must eventually pay the tax to the seller, as collector.

That conclusion brings us to the contention made by the municipalities to the effect that they should not be required *as purchasers* to pay the tax to the merchants with whom they deal, and that the latter should not be permitted to collect it from them, because (as their counsel argue) they are "institutions" of the commonwealth of Kentucky, and which, if true, they are expressly exempted by the inserted section 5 of the act. That contention is attempted to be supported by the argument that municipalities are institutions of the

commonwealth within the meaning of that section, but which we are convinced is untrue. The language is "and institutions thereof," i. e., institutions of the state, and which we conclude was intended to embrace only the various departments and institutions of the state whose jurisdictions and functions are co-extensive with its boundary, such as its Road Department, Welfare Department, State Board of Health, and others forming the long list of state governmental agencies and, that the Legislature in enacting that section never intended to recognize municipalities as institutions of the state, although for some purposes they may be 'and are considered as such. The language clearly shows that the exemption was confined to state-wide public institutions and not to local ones. See In re Houk's Estate (City of Oceanside v. Moody) 186 Col. 643, 200 P. 417. It, therefore, follows that the trial court was correct when it held that municipalities are liable for• the tax upon the purchase price that it pays for the taxed commodities in all cases, except· where they are purchased exclusively for use by their purely educational or charitable institutions.

In further fortification of the conclusions herein reached, reference is made to the cases of, Orange State Oil Co. v. Amos, 100 Fla. 884, 130 So. 707; City of West Palm Beach v. Amos, 100 Fla. 891, 130 So. 710; United States v. Perkins, 163 U. S. 625, 16 S. Ct. 1073, 41 L. Ed. 287; Texas Company v. Brown, 258 U. S. 466, 42 S. Ct. 375, 66 L. Ed. 721; City of Portland v. Kozer, 108 Or. 375, 217 P. 833; Standard Oil Co. v. Brodie, 153 Ark. 114, 239 S. W. 753; and Pierce Oil Corporation v. Hopkins (C. C. A.) 282 F. 253. In the latter one the court had before it a statute in some respects similar to the one here involved, but in addition it imposed upon the seller a *personal* obligation to pay the levied tax, whether he collected it from the purchaser or not, and which fact was the sole one influencing the court to conclude that it was a tax on the seller rather than on the buyer; the opinion disclosing that but for that fact a different conclusion would have been reached.

Summarizing our conclusions are: (a) That the tax involved here creates a burden upon the purchaser, or buyer, and is not one borne by the seller or merchant; (b) that as merchant or seller municipalities, as well as charitable and educational institutions, are required to charge it and collect it from all customers who are not

exempt from paying it, and to account therefor; (c) that municipalities, as buyers of the taxed commodities, must pay the tax as required by the statute upon all purchases made by them, upon the sale of which the levy is made, éxcept those made exclusively for their educational and charitable institutions; (d) that the merchant or seller is exonerated from paying the tax on sales made to charitable and educational institutions, and other classes of buyers who may be exempt from paying it as purchasers; and (e) that such exempt purchasers are, the state and its administrative institutions, and also purely educational, eleemosynary, and charitable institutions, as well as purely federal activities. The judgment appealed from harmonizes with our conclusions, with the single exception that it exonerated charitable, eleemosynary, and educational institutions from collecting or accounting for the tax when engaged in the activity of *merchant* or *seller,* but which we have herein determined was and is erroneous.

Wherefore, the judgment, except to the extent indicated, is affirmed, but as to the extent set forth in our conclusion (b) it is reversed, with directions to modify it so as to conform with this opinion.

The whole court sitting.