Evelyn D. MATTHEWS, Movant,

v.

Samuel L. LEWIS, et al., Respondents.

Supreme Court of Kentucky.

June 16, 1981.

Alan L. Schmitt, Legal Aid Society, Inc., Elizabethtown, for movant.

Walter L. Porter, Louisville, for respondents.

Bruce D. Atherton, Louisville, for amicus curiae.

## OPINION OF THE COURT

The question presented by this case is whether assets received from a statutorily exempted source and placed by the recipient into his or her bank checking account lose their exempt status.

Movant Evelyn Matthews received a worker's compensation payment in the amount of $146.78 and deposited same to her checking account on May 14, 1979, increasing her balance to $149.19. Movant wrote a check for $36.00, which was paid on May 18, 1979, which reduced her checking account balance to $113.19. In other words, is the sum of $113.19 exempt from execution because it represents the proceeds of a worker's compensation benefit check, which is without question, beyond the reach of creditors?

Sometime prior to May 18, 1979, respondents Samuel L. and Martha Lewis obtained a civil judgment against movant in the Jefferson District Court. On that date an order of garnishment was issued against movant in which the bank was named as a garnishee. Pursuant to the garnishment, the bank paid into the district court the balance of $113.19. Thereupon, movant sought to have this money declared exempt and returned to her. Her motion was denied, and she appealed to the Jefferson Circuit Court where the action of the district court was affirmed on July 14, 1980. The Court of Appeals of Kentucky, on August 27, 1980, denied review. On January 8, 1981, this court granted review.

The workers' compensation statute (KRS 342.180), which we have under consideration, provides as follows:

"342.180. Compensation claim not assignable—Exempt from debts.—No claim for compensation under this chapter shall be assignable; and all compensation and claims therefor shall be exempt from all claims of creditors."

Before setting out to answer the issues, we need to consider the purpose for which an exemption statute is adopted.

The intent of the Kentucky Workers' Compensation Act is to provide a means of self-support to those who have been injured

in the market place. The compensation payments are in lieu of wages that, were it not for the job-related injury, would be received regularly. This money must be available to the beneficiary upon receipt and thereafter if he is to provide for himself life's necessities of food, clothing, and shelter. A judgment debtor's interest in bare survival must invariably predominate over the interest of creditors in mere economy of debt collection. *Benito Mining Co. v. Girdner*, 271 Ky. 87, 111 S.W.2d 571 (1937); *Black Mountain Corporation v. Adkins*, 280 Ky. 617, 133 S.W.2d 900 (1939). The right to a subsistence way of life is considered fundamental. *Finberg v. Sullivan*, D.C., 461 F.Supp. 253 (1978). "The legislative objective in providing unemployment compensation and disability benefits—to furnish the unemployed worker and his family with a stream of income to defray the cost of their subsistence—would probably fail if creditors could seize that income and apply it to past debts. Consequently the Legislature provided that unemployment and disability benefits cannot be subjected to attachment or execution." *Kruger v. Wells Fargo Bank*, 11 Cal.3d 352, 113 Cal.Rptr. 449, 521 P.2d 441 (1974).

Our society's contemporary social programs exhibit a philosophy of relief for the distressed, the impoverished, and the victims of personal and financial catastrophes among us. The Workers' Compensation Act is simply one aspect of those social programs. Kentucky's exemption statutes are simply another necessary instrument in the overall scheme of social welfare programs. They are the teeth in the prosecution given certain deserving victims from their creditors.

We now turn to a consideration of the arguments advanced by the parties before us and their able counsel.

In *Ball v. Smiddy*, Ky., 249 S.W.2d 715 (1952), this court held that real estate purchased with money received in a "lump sum" settlement of compensation payments was not exempt from judicial sale in order to satisfy a judgment upon a promissory note. In support thereof, this court quoted from *Merrell Drug Co. v. Dixon*, 131 Ky. 212, 115 S.W. 179 (1909), as follows:

"Our conclusion, then, is that the exemption contained . . . in the statute does not apply to the fund after its form is changed *and it is invested in other property. . . .*" (Emphasis added)

The *Ball* and the *Merrell Drug Co.* cases are distinguishable on their facts from the instant case, since in the instant case the worker's benefit check was deposited in movant's bank checking account and did not lose its identity or change its form, while in the *Ball* and *Merrell Drug Co.* cases the recipients of exempt funds used those funds to purchase real estate, thereby changing their form and losing their identity.

Respondents cite *Robion v. Walker*, 5 Ky. L.Rptr. 799, 82 Ky. 60 (1884), as additional authority that a change in form equals a loss of exempt status and refers us to a line of "factually similar cases," as follows: *Hudspeth v. Harrison*, 6 Ky.L.Rptr. 304, 13 Ky.Opin. 25 (1884); *Herreld v. Skillem's Assignee*, 6 Ky.L.Rptr. 666, 13 Ky.Opin. 353 (1885); *Ashler v. Terry*, 6 Ky.L.Rptr. 745 (1885); and *Carter & Co. v. Strange*, 7 Ky.L.Rptr. 302, 13 Ky.Opin. 650 (1885). These cases concerned the receipt of pension payments made by the United States government. In each case the pensioner used the money received from the government to purchase real estate. For the reason that there was a change in form, we agree that the holding in each of these cases finding the exemption not applicable was correct. However, these cases make the point that once payment enters the pensioner's hands, it loses its exemption. To the extent that these cases are in conflict with the holding enunciated in this opinion, they are overruled.

In *Lawrence v. Shaw*, 300 U.S. 245, 57 S.Ct. 443, 81 L.Ed. 623 (1937), the guardian of an incompetent war veteran had deposited payments received from the United States government in certain banks. The state of his domicile unsuccessfully attempted to levy a property tax thereon. The court stated:

"... We hold that the immunity from taxation does attach to bank credits of the veteran or his guardian which do not represent or flow his investments but result from the deposit of the warrants or checks received from the government when such deposits are made in the ordinary manner so that the proceeds of the collection are subject to draft upon demand for the veteran's use. In order to carry out the intent of the statute, the avails of the government warrants or checks must be deemed exempt until they are expended or invested."

The Supreme Court was interpreting Section 3 of the World War Veterans' Act of 1924, which stated in pertinent part, "Payments of benefits due or to become due ... shall be exempt from the claims of creditors ... either before or after receipt by the beneficiary." We feel that the same result is appropriate here under KRS 342.180, which states in pertinent part, "... all compensation and claims therefor shall be exempt from all claims of creditors." The statute is self-evident; all compensation shall be exempt from all claims of creditors. It would be sheer, ineffectual folly to argue that compensation is exempt until it touches the hands or the bank checking account and from that instant is completely available to a creditor possessing an attachment order. If that be the case, where is the exemption? It would be nonexistent and it would practically render KRS 342.180 useless. We do not believe the legislature expends its efforts in enacting practically useless laws.

Respondents cite *Highland Park State Bank v. Salazar*, 555 S.W.2d 484 (Tex.Civ. App.1977), as an illustration of a case where workers' compensation payments which had been placed in a bank account were held to have lost their exempt status. That case is distinguishable both in law and in fact from the subject action. The case at bar deals with a worker's compensation payment retaining its exempt status after it had been deposited in a bank checking account, while in *Highland Park State Bank* there had been an assignment of a worker's compensation payment to secure an indebtedness

which had been incurred subsequent to the receipt of the payment—a distinction with a definite difference since the Kentucky statute and the Texas statute differ as to an act of assignment. The Kentucky statute prohibits the assignment of a claim for workers' compensation, while the Texas statute prohibits an assignment of the compensation itself as well as prohibiting an assignment of a right of action for workers' compensation.

Respondents also cite *McCabe v. Fee*, 279 Or. 437, 568 P.2d 661 (1977), wherein the Oregon Supreme Court held that workers' compensation awards were not exempt from attachment after having been deposited in a bank account. The decision of that court was predicated on a statute so dissimilar to the Kentucky statute as to prevent a meaningful comparison.

Respondents cite *John O. Melby & Co. Bank v. Anderson*, 88 Wis.2d 252, 276 N.W.2d 274 (1979), in support of their argument that workers' compensation payments when deposited in a bank account lose their exempt status. The Supreme Court of Wisconsin was therein faced with the task of interpreting the federal statutory restriction on garnishment of employees' wages. However, here we are not interpreting the intent of the United States Congress. We are interpreting the Kentucky exemption statute, which is decidedly different.

In *Beattyville Co. v. Sizemore*, 203 Ky. 7, 261 S.W. 620 (1924), the workers' compensation insurance carrier for the Beattyville Company sought to set off against an award made to an employee of the company a lawful claim that it held against the employee. The Workers' Compensation Board denied the set-off, and on appeal to the circuit court the decision of the Board was affirmed. This court affirmed the circuit court. In doing so, it quoted the workers' compensation exemption statute, then section 4913 of the statutes, as follows: "No claim for compensation under this act shall be assignable, and all compensation and claims therefor shall be exempt from all claims of creditors." This court reasoned

that the parties occupied the status of creditor and debtor and that "The broad terms of section 4913 exempt the awarded compensation from claims of all creditors, which would include any creditor, notwithstanding he may also be the one against whom the award was rendered." Clearly, therefore, a set-off occupies no greater status than a general creditor.

In *General Motors Acceptance Corp. v. Falcone*, 130 N.J.Super. 517, 327 A.2d 699 (1974), cited by movant, the New Jersey Court was faced with a factual situation similar to the instant case. Falcone was the recipient of both social security benefits and workers' compensation benefits. He had deposited his social security check for $518.10 and a worker's compensation check for $342.00 in his bank checking account. General Motors Acceptance Corporation had secured a judgment against Falcone and had caused an execution to be issued and levied on his bank account. The New Jersey Court stated the issue to be:

"The question presented to the court is whether the exemption provided in the Workmen's Compensation Act applies to monies after payment to a debtor.

The relevant portion of the Workmen's Compensation Act, N.J.S.A. 34:15–29 provides:

'Claims or payments due under this chapter shall not be assignable, and shall be exempt from all claims of creditors and from levy, execution or attachment.' "

In disposing of the issue, the court wrote:

"I find that the intent of the exemption in the Workmen's Compensation Act, N.J.S.A. 34:15–29, is not limited to monies before payment to a petitioner but also to funds actually paid to him and deposited in a bank account, insofar as said funds are traceable to workmen's compensation benefits."

When we compare the New Jersey statute with the Kentucky Statute, we find the similarity to be so great as to shed much light on the course we have taken in the disposition of the present issue. The *General Motors Acceptance Corporation* case has been cited with approval in *Dover Oil Company v. Sedor*, 178 N.J.Super. 46, 427 A.2d 1135 (1981); *Richman v. Pratt*, 174 N.J.Super. 1, 414 A.2d 1371 (1980).

In *First National Master Charge v. Gilardi*, 44 Ohio App.2d 383, 324 N.E.2d 576 (1975), the court recognized that its decision would require a hearing to separate exempt from non-exempt funds then in the recipient's checking account. Nevertheless, the court went on to hold that "... poor relief funds deposited in a recipient's checking account retains the statutory exemption."

The amicus curiae brief cries wolf when there is no wolf. Garnishment proceedings are treated with particularity in KRS Chapter 425, and we are of the opinion that the parties are therein well protected. As a matter of fact, amicus answers its own problem. On page two of its brief it is written:

"Should this Court hold that exempt funds retain their exempt status after deposit, banks will have to create new contractual relationships with those people depositing exempt funds in order to avoid subjecting themselves to potential liability, either to the drawer of a negotiable instrument, the payee of the instrument, or to the attaching creditor."

So be it.

We hold that unless they provide clearly to the contrary, Kentucky's exemption statutes, including but not limited to KRS 342.-180, extend protection to deposits in bank checking accounts so long as those deposits can be identified as or traced to payments of exempt funds.

The judgment of the Jefferson Circuit Court is reversed and this case is remanded to the circuit court for the entry of a judgment in keeping with this opinion.

All concur.