**In re Arthur William KALEHER, III, Debtor.**

**Charles E. PEYTON, Trustee, Plaintiff,**

v.

**Arthur William KALEHER, III, Defendant.**

**Bankruptcy No. 38100580.**
**Adv. No. 3810308.**

United States Bankruptcy Court, W. D. Kentucky.

April 9, 1982.

Charles E. Peyton, Louisville, Ky., trustee-plaintiff.

Joseph S. Elder, II, Louisville, Ky., for defendant.

## ORDER

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

A hybrid form of exemption, a product of the fertile imagination of debtor's counsel, is claimed in this case. If legally permissible, the claimed exemption could significantly increase the amount of money one could keep upon taking bankruptcy.

Simply stated, the theory is that the amount represented by a federal income tax refund check should be treated, for bankruptcy purposes, the same as wages earned but unpaid. A brief background is necessary to explain this novel position.

Income tax refunds have always been treated as cash in the hands of the debtor, fully subject to seizure by the trustee, and protectable by the debtor only with applicable statutory exemptions. In Kentucky, there was no state statutory exemption for cash until 1980. Therefore, needless to say, the debtor's income tax refund check was in every case the object of intense inquiry, if not to say hot pursuit, by the diligent trustee.

Wages due, on the other hand, are subject to attachment (and therefore the claims of the trustee) only to the extent of 25 per cent of the amount owed to the employee for the pay period. That is, the debtor gets to keep three-fourths of the wages owed him.

The debtor here takes the position that the income tax refund is nothing more than a return to him of a portion of wages withheld, remitted to the government as taxes due, and subsequently returned to the taxpayer-debtor in the form of a refund check after the necessary tax computations revealed the amount overpaid. The net effect of the theory is that the debtor would be able to exempt up to $1,000 in cash under Kentucky's "catch-all" or "pour-over" exemption, *plus* 75% of the wages due him, *including* the tax refund check, as of the date of filing.

Debtor's counsel points to current Kentucky case law in support of the liberal "tracing" of exempt funds. In *Matthews v. Lewis*, 617 S.W.2d 43 (Ky.1981), monies that were by their nature exempt were held not to lose their protected quality simply because they were deposited in a bank account and commingled with other, non-exempt funds of the debtor. *Matthews v. Lewis* makes abundant common sense and good public policy, and we take no exception to its holding.

This debtor's theory, on the bald statement of it, also makes sense. But analysis of the theory betrays the difference between the depositary functions of the commercial bank and the Internal Revenue Service.

The tax withholding system is nothing more than a medium for the swift advance collection of projected tax revenues through fiscal intermediaries (employers), leaving it to the two principals (the taxpayer and his government) to ascertain with exactitude the tribute due the sovereign.

Monies which absent the withholding system would be payable directly to the wage earner find their way instead into the vast fungible largesse of the federal treasury, there to remain until properly claimed. It is at the point of withholding that the very nature of the money changes, from wages to taxes. At that point the money belongs to the government.

The taxpayer's claim against the treasury, if any, takes the form of his tax return. The amount of money—or wages, as the debtor would have it—to be returned to the taxpayer is subject to an infinite number of calculations, deriving from the interplay of an equally incalculable number of variable taxpayer circumstances. It is these calculations which result in the refund, not the amount of the wages withheld. To the lucky, prudent or adroit taxpayer, a rather substantial portion of taxes withheld may be recaptured by him. To the unschooled, clumsy or unfortunate, the result may be forfeiture of the whole.

In either event, there is no reasonable relation between the amount initially withheld and that which may be refunded. That is because it is *taxes,* not *wages,* which are withheld.

The presumption of taxes due to the taxing authority, and the criminal consequences of the employer's failure to withhold and remit them, are only too well known. It is the obligation of the taxpayer, with all of the tax reduction devices at his disposal, to maximize his claim for refund. In a given case, for example, it would be possible for a taxpayer to assert, with one major deductible loss, a claim against the treasury which would exceed the entire amount withheld from his wages and to be withheld the following year. In such a case the taxpayer could hardly persuade his employer, considering the unforgiving attitude of the federal tax laws, to cease withholding his "wages" for the following year.

The view advanced by this debtor would work, in bankruptcy, a discriminatory effect in the case of the many taxpayers, such as the self-employed, retired, and those with unearned income, whose taxes are not withheld. From their standpoint, a most serious equal protection argument could be raised.

Further, debtor's counsel might reflect on the broader implications of this theory of traceable exemptions. Are social security deductions, contributions to pension and profit-sharing plans, and withheld payments on credit union loans to be considered "wages" vulnerable to the trustee's demands? What about other traceable deposits, such as for rent and utilities? Questions abound. Our ruling precludes their entertainment.

We may have belabored the obvious— that "taxes" are not "wages"—only because of the unique and provocative nature of the claim. It was not lightly brought, nor has it been lightly regarded.

In view of our substantive treatment of the claim, two related procedural questions are easily disposed of. Having reviewed the tape recording of the first meeting, we find the trustee's objection to the claimed exemption to have been timely, although verbally, made. Nor is the debtor's failure to amend the exemption schedule a crucial matter; amended or not, the schedule may gain for the debtor only those exemptions permitted by law, no others. Accordingly,

IT IS ORDERED that the claimed exemption of 75 per cent of the amount of the income tax refund is denied, and the trustee shall collect the entire amount of that refund.