Carl J. BROWN Appellant/Cross–Appellee,

v.

COMMONWEALTH of Kentucky, Natural Resources Andenvironmental Protection Cabinet, Appellee/Cross–Appellant.

Nos. 1998–CA–000840–MR (Direct), 1998–CA–000901–MR (Cross).

Court of Appeals of Kentucky.

Oct. 8, 1999.

Steve P. Robey, Valerie L. Bock, Law Office of Steve P. Robey, Providence, Kentucky, for appellant/cross–appellee.

Michael P. Wood, Natural Resources and Environmental Protection Cabinet, Frankfort, Kentucky, for appellee/cross-appellant.

Before: BUCKINGHAM, HUDDLESTON, and KNOPF, Judges.

## OPINION

KNOPF, Judge:

### Introduction

Carl Brown appeals and the Commonwealth's Natural Resources and Environmental Protection Cabinet (NREPC or the Cabinet) cross-appeals from March 12, 1998, and January 22, 1998, orders of Franklin Circuit Court subjecting portions of two (2) checking accounts owned by Brown and his wife to garnishment, and exempting from garnishment other portions of those accounts. Being persuaded that both Brown's appeal (1998–CA–000840) and the Cabinet's cross-appeal (1998–CA–000901) identify matters that must be corrected or reconsidered, we reverse in part and vacate in part the circuit court's orders and remand for additional proceedings.

In May 1997, the circuit court, on behalf of NREPC, found Brown liable for coal-mining violations and upheld penalties the Cabinet had assessed against him.[1] In July 1997, the circuit court issued orders of garnishment pursuant to the May judgment, which the Cabinet served on two (2) banks maintaining joint checking accounts for Brown and his wife. One of the banks

surrendered the money it held ($322.39) to the Cabinet, and the other transferred its disputed funds ($1,473.27) to the court. Brown asserted (it has since been stipulated) that the accounts contained no funds except wages paid to Brown or his wife, and thus that they were protected by two (2) statutory exemptions: one protecting his wages pursuant to KRS 427.010, and one protecting his wife's wages pursuant to KRS 390.310. The trial court rejected Brown's claim with respect to his wife's wages, but agreed that KRS 427.010 precluded garnishment of the accounts to the extent that they could be shown to contain Brown's wages. Brown appeals from the determination that his wife's wages are subject to garnishment, the Cabinet from the determination that Brown's are not.

### Discussion

#### Standard of Review

 The trial court's interpretation of a garnishment or exemption statute is, of course, a question of law. This Court reviews the trial court's legal conclusions *de novo. Louisville and Nashville Railroad Co. v. Commonwealth, ex rel Kentucky Railroad Commission*, Ky., 314 S.W.2d 940, 943 (1958). When interpreting a statute, we look to the statute's express language and overall purpose. *Democratic Party of Kentucky v. Graham*, Ky., 976 S.W.2d 423 (1998); *Kentucky Region Eight v. Commonwealth*, Ky., 507 S.W.2d 489 (1974). The task begins with the language of the statute itself. When a statute's language is plain, "the sole function of the courts is to enforce it according to its terms." *Caminetti v. United States*,

---

1. In January[ ] 1999, this Court affirmed the liability determination against Brown, but remanded for reconsideration of the penalty. Because some penalty, albeit not necessarily the original one, remains in effect, the issues raised on this appeal require consideration on the merits. *Price v. Commonwealth of Kentucky, Transportation Cabinet*, Ky., 945 S.W.2d 429 (1996).

242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917); *Bailey v. Reeves,* Ky., 662 S.W.2d 832 (1984). When the statute's language admits of more than one reasonable interpretation, however, courts attempt to understand the legislative intent by considering the legislative history, the statutory context, and, where the statute is plainly based on or intended to coordinate with legislation from another jurisdiction, the construction of similar statutes by other courts. *Schmitt Furniture Company, Inc. v. Commonwealth of Kentucky Revenue Cabinet,* Ky., 722 S.W.2d 889 (1987); *Burke v. Stephenson,* Ky., 305 S.W.2d 926 (1957); *City of Owensboro v. Noffsinger,* Ky., 280 S.W.2d 517 (1955); and *City of Covington v. State Tax Commission,* 257 Ky. 84, 77 S.W.2d 386 (1934).

*Brown's Wages*

■ We shall first address the issue concerning Brown's wages and KRS 427.010. KRS Chapter 427 is titled Exemptions, and section .010 of that chapter provides in pertinent part as follows:

(2) Except as provided in subsection

(3) of this section and KRS 427.050, the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed the lesser of either:

(a) Twenty-five percent of his disposable earnings for that week, or

(b) The amount by which his disposable earnings for that week exceed thirty times the federal minimum hourly wage prescribed by Section 6(a)(1) of the Fair Labor Standards Act of 1938 in effect at the time the earnings are payable. In the case of earnings for any pay period other than a week, the multiple of the federal minimum hourly wage equivalent to that set forth in paragraph (b) of this subsection as prescribed by regulation by the federal secretary of labor shall apply.

(3) The restrictions of subsection

(2) of this section do not apply in the case of:

(a) Any order of any court for the support of any person.

(b) Any order of any court of bankruptcy under Chapter 13 of The Bankruptcy Code.

(c) Any debt due for any state or federal tax.

This statute is modeled upon the federal Consumer Creditor Protection Act (the "CCPA").[2] That act requires state garnishment exemption statutes to comply with federal limitations on amounts that may be garnished. Consequently, most state wage garnishment exemption statutes, including Kentucky's, track the language of the federal act. The Supreme Court interpreted the federal act in *Kokoszka v. Belford,* 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974), and determined that a tax refund did not constitute "disposable earnings" under the CCPA and therefore was not exempt from administration in Kokoszka's bankruptcy case. In reaching this decision, the Supreme Court analyzed the purpose of the CCPA and stated that

[i]ndeed, Congress' concern [in passing the act] was not the *administration* of a bankrupt's estate but the *prevention* of

---

**2.** Congress enacted Subchapter II of the CCPA (15 U.S.C. §§ 1671–1677) in 1968 for the purpose of imposing nationwide restrictions on garnishments to protect debtors from the predatory lending practices of some credit institutions. *Kokoszka v. Belford,* 417 U.S. 642, at 650–51, 94 S.Ct. at 2435–36, 41 L.Ed.2d 374. 15 U.S.C. § 1671. The CCPA, which became effective on July 1, 1970, preempts any less restrictive state garnishment statutes. 15 U.S.C. § 1673(c).

a bankruptcy in the first place by eliminating "an essential element in the predatory extension of credit resulting in a disruption of employment, production, as well as consumption" and a consequent increase in personal bankruptcies.

*Id.* at 650, 94 S.Ct. at 2436 (footnote omitted) (citing H.R.Rep. No. 1040, 90th Cong., 1st Sess., 20 (1967)).

The Court, making further reference to the legislative history of the CCPA, went on to explain that

"[t]he limitations on the garnishment of wages adopted ... while permitting the continued orderly payment of consumer debts, will relieve countless honest debtors driven by economic desperation from plunging into bankruptcy in order to preserve their employment and insure a continued means of support for themselves and their families."

*Id.* at 651, 94 S.Ct. at 2436 (quoting H.R.Rep. No. 1040, 90th Cong., 1st Sess., 21 (1967)). From this history, the Supreme Court summarized that "Congress, in an effort to avoid the necessity of bankruptcy, sought to regulate garnishment in its usual sense as a levy on periodic payments of compensation needed to support the wage earner and his family on a week-to-week, month-to-month basis." *Id.*

As noted by the Supreme Court in *Kokoszka*, the federal CCPA did not create a true exemption applicable to bankruptcy proceedings, but sought instead to prevent bankruptcies by protecting the debtor's employment. This protection consisted of a limitation on the portion of earnings subject to the employer's garnishment and a prohibition against discharging employees because their earnings had been garnisheed for any one indebtedness. These provisions were not intended to create a new fund beyond the reach of creditors, but only to prevent creditors from unduly burdening the employment relationship.

■ The act's reference to wages "payable or paid" has also required interpretation. Is it applicable only to wages still under the employer's control, or is it meant to apply to wages even after they have been transferred to the employee? In light of the CCPA's limited purpose, virtually all of the courts to consider whether that act applies to wages deposited into bank accounts or otherwise removed from the employer's control have found that it does not. *In re Lawrence*, 219 B.R. 786 (Bankr.E.D.Tenn.1998) (collecting cases); *Usery v. First National Bank of Arizona*, 586 F.2d 107 (1978). The CCPA, however, establishes only a floor of debtor protection; states are free under the act to impose their own more rigorous restrictions on garnishment. The first question before us, therefore, becomes whether Kentucky's adoption of the CCPA evidences an intention to extend the act's protection to wages that have passed from the employer to the employee's bank account.

In ruling that it does, the trial court relied heavily upon our Supreme Court's opinion in *Matthews v. Lewis*, Ky., 617 S.W.2d 43 (1981). In that case, workers' compensation benefits in the appellant's checking account had been garnisheed, and the Court was asked to decide whether KRS 342.180 precluded the garnishment. That statute provided[3] in part that "[n]o claim for compensation under this chapter shall be assignable; and all compensation and claims therefor shall be exempt from all claims of creditors." The Court ruled that this language was intended to preclude garnishment, and observed that

[o]ur society's contemporary social programs exhibit a philosophy of relief for

---

3. KRS 342.180 was amended in 1994.

the distressed, the impoverished, and the victims of personal and financial catastrophes among us. The Workers' Compensation Act is simply one aspect of those social programs. Kentucky's exemption statutes are simply another necessary instrument in the overall scheme of social welfare programs. They are the teeth in the prosecution [sic] given certain deserving victims from their creditors. .

. . . .

We hold that unless they provide clearly to the contrary, Kentucky's exemption statutes, including but not limited to KRS 342.180, extend protection to deposits in bank checking accounts so long as those deposits can be identified as or traced to payments of exempt funds.

*Id.* at 44, 46.

Believing the pertinent portions of KRS 427.010 to be an exemption statute, and believing the portions of *Matthews* just quoted to apply thereto, the trial court concluded that Brown's wages traceable to his checking accounts were subject to the statutory limitations on garnishment. We disagree.

As discussed above, KRS 427.010(2) and (3) appear to create what is most accurately called a restriction on garnishment, not, as did the workers' compensation statute at issue in *Matthews*, a true exemption with bankruptcy ramifications. KRS 427.010(2), it will be recalled, provides only that "the maximum part of the aggregate disposable earnings of an individual for any workweek *which is subjected to garnishment* may not exceed . . . ." (emphasis added). KRS 342.180, on the other hand, as it did at the time of *Matthews*, still provides in part that "all compensation and claims therefor . . . *shall be exempt from all claims of creditors.*" (emphasis added). Here and elsewhere, the General Assembly has demonstrated that, when it intends an exemption, it says so. *See, for example*, KRS 40.550(3) ("no claim for payment shall be subject to attachment, levy, garnishment or seizure by or under any legal or equitable process whatever") *and* KRS 61.690 ("All retirement allowances and other benefits . . . are hereby exempt from any state, county, or municipal tax, and shall not be subject to execution, attachment, garnishment, or any other process, and an assignment thereof shall not be enforceable in any court.") We note that the states whose courts have found in their wage protection statutes a true exemption are all states whose legislatures modified the federal statute to make that intention clear. They have precluded not just the garnishment of wages beyond the twenty-five (25) percent limit, but the "attachment or execution upon" such wages as well. *In re Lawrence, supra.* This is the sort of language legislatures use to create exemptions, the General Assembly included. We are thus persuaded that KRS 427.010 is not an exemption statute and, therefore, that *Matthews* does not bear on our interpretation of it. We also note that the Supreme Court's opinion in *Kokoszka* and the Ninth Circuit's opinion in *Usery, supra,* are more than twenty (20) years old now and may be presumed to have come to the General Assembly's attention. That the General Assembly has not in the interim deviated from the federal version of the law strongly suggests an intention to adopt the federal interpretation. *Democratic Party v. Graham, supra.* We conclude that KRS 427.010(2) and (3) provide only for limited debtor protection and not for a broader exemption such as that created by KRS 432.180 and similar statutes. We conclude further that the limited protection is the same found to have been provided by the federal CCPA, that is, a

limitation only on the extent to which an employee's earnings may be garnisheed at his or her workplace.

Brown maintains that this construction cannot be correct because it renders the statute meaningless. What relief is there for the debtor, he wonders, if the creditor need only replace his garnishment of the employer with a garnishment of the bank? We believe, however, that the difference is significant. Checking accounts are not as necessary as employment to the financial viability of a household. Furthermore, the limited protection afforded by the law encourages debtors and creditors alike to consider the long-term ramifications of the garnishment. Thus, both the creditor and the debtor must decide whether they would not be better off in the long run if the debtor was not forced into bankruptcy, but was instead encouraged to continue working and steadily repaying his debts. We do not agree, therefore, that KRS 427.010(2) and (3) are meaningless unless extended to wages deposited in a checking account.

We do agree with Brown, however, that at least the secondary purposes of the statute are to some extent compromised by the garnishment at issue here. For, while the debtor's plunge into bankruptcy is made likely if all or most of his wages are intercepted before he receives them, confiscation of the debtor's wages immediately after receipt tends toward the same result. The question arises, therefore, whether there is not a more generous interpretation of the statute than the one we have suggested. Would it not be possible to do both, to protect more fully than the CCPA seems to do the debtor's interest in maintaining a viable household as he gradually climbs out of debt, while at the same time avoiding the creation of a new exemption? It is conceivable, for example, that wages in a checking account could be afforded

protection from creditors as long, but only as long, as the debtor refrained from bankruptcy and continued to work under a limited wage garnishment.

We are not persuaded, however, that KRS 427.010(2)-(3) can reasonably be read to afford such protection. Neither it, the similar sister-state statutes, nor the CCPA has ever, to our knowledge, been so read. Nor is the General Assembly likely to have intended such protection without having said so more clearly than KRS 427.010 does. We conclude, therefore, that, while the employment protection afforded by KRS 427.010(2)-(3) may provide only a weak and imperfect bulwark against bankruptcy, that imperfection does not render the statute meaningless, nor does it compel the interpretation adopted by the circuit court. Accordingly, we reverse the portion of the trial court's judgment that excluded from the Cabinet's order of garnishment the portions of Brown's checking accounts attributable to his wages.

*Brown's wife's wages*

■ The parties stipulated that Brown's wife, Darla, contributed about forty-four (44) percent of the monies held in the garnished accounts. Brown claims that Darla's contributions are "exempt" from garnishment, and that the trial court erred by failing to so rule. The trial court, relying on *Barton v. Hudson,* Ky.App., 560 S.W.2d 20 (1977), held that, because Brown was authorized by the terms of the accounts to withdraw all the money in them, they should be deemed his separate property for garnishment purposes. Again, we must disagree. We are persuaded that the trial court has read *Barton* too broadly and in so doing has run afoul of statutory provisions for the joint ownership of checking accounts.

■ It is well at the outset of our discussion of this issue to address a point of terminology. The garnishment statute,

KRS 425.501(5), provides in part that a challenged order of garnishment may not be upheld unless "the court finds that the garnishee was, at the time of service of the order upon him, possessed of any property of the judgment debtor, or was indebted to him, *and* the property or debt is not exempt from execution . . . ." (emphasis added). The question raised by Darla's contribution to the checking accounts does not concern an exemption, as the parties seem to have presumed, but rather the other prong of KRS 425.501(5), that is, whether and to what extent the garnishee banks are "possessed of any property of the judgment debtor . . . ." Because the judgment creditor can acquire an interest in garnished property no greater than the judgment debtor's, proof of the debtor's non-interest will defeat the garnishment. *Bank One, Pikeville, Kentucky v. Commonwealth of Kentucky, Natural Resources and Environmental Protection Cabinet,* Ky.App., 901 S.W.2d 52 (1995).

In *Barton v. Hudson,* this Court was asked to decide whether a joint checking account between husband and wife with right of survivorship was subject to garnishment by a creditor of the husband, or whether, like similarly owned realty, the checking account was immune from such execution. The Court distinguished the two (2) forms of property, in part on the ground that either the husband or the wife alone could alienate the funds in the account, and upheld the garnishment. As the Court noted, although a few states regard spouses' jointly held checking accounts as tenancies by the entirety in which neither spouse has a separate interest, the majority rule is otherwise. 560 S.W.2d at 22 (citing Annot. "Joint Bank Account as Subject to Attachment, Garnishment, or Execution by Creditor of one of the Joint Depositors" 11 A.L.R.3d 1465, II, § 3).

It thus having been determined that joint accounts are not immune from garnishment, the next question is to what extent is the account vulnerable? In *Barton,* the Court upheld the garnishment to the full extent of the husband's debt, but the question of the husband's ownership does not seem to have been an issue in that case, inasmuch as the Court did not discuss the wife's countervailing interest or the rule that the judgment creditor acquires an interest in the garnished property no greater than the debtor's.

Courts that have addressed this question have divided on the extent to which the debtor's access to the full account should be deemed proof of his or her ownership thereof. The Supreme Court of Minnesota, for example, has ruled that a joint owner of a checking account may, at least with respect to creditors, be conclusively presumed to own the entire balance, the other owners, whether contributors or not, having assumed the risk that any one of them might compromise it. *Park Enterprises v. Trach,* 233 Minn. 467, 47 N.W.2d 194 (1951).

Most courts, however, more sensitive than the Minnesota Court to the due process concerns involved and to the fact that people use such accounts for myriad purposes, have adopted a less categorical approach. Nebraska's courts, for instance, presume initially that joint-account holders own the account in equal proportions, but the presumption may be rebutted by evidence of the owners' different contributions, different degrees of control, and/or different intentions. The burden of proof is on the party attacking the presumption. *In re Overton,* 169 B.R. 196 (Bankr.D.Neb. 1994). Hawaii's courts, on the other hand, presume that a joint-account holder owns the entire account, but allows her, or any other joint tenant, to rebut the presumption by suitable proof. *Traders Travel*

*International, Inc. v. Howser,* 69 Haw. 609, 753 P.2d 244 (1988). *See also Maloy v. Stuttgart Memorial Hospital,* 316 Ark. 447, 872 S.W.2d 401 (1994). According to the A.L.R. annotation cited in the *Barton* opinion, Hawaii's approach is that of the majority. This rule is favored in large part because it puts the burden of proving the nature of the account on those in the best position to do so. *Traders Travel International, Inc. v. Howser, supra;* 11 A.L.R.3d at 1476 (1967, Supp.1999).

The trial court here apparently understood *Barton* to imply a rule similar to Minnesota's. Brown's access to the entire balances of the joint accounts, the court ruled, passed to the Cabinet. Its transfer of the accounts to itself, therefore, would injure Darla no more than would Brown's unilateral emptying of them. As noted, however, we are not persuaded that *Barton* even addressed this issue, much less decided it in this manner. On the contrary, we believe that provisions of KRS Chapter 391 require a different result.

KRS 391.310 provides in pertinent part as follows:

(1) A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent.

A party's "net contribution" to the account is defined at KRS 391.300(6) as

the sum of all deposits thereto made by or for him, less all withdrawals made by or for him which have not been paid to or applied to the use of any other party, plus a pro rata share of any interest or dividends included in the current balance. The term includes, in addition, any proceeds of deposit life insurance added to the account by reason of the death of the party whose net contribution is in question[.]

Finally, KRS 391.305 provides that

The provisions of KRS 391.310 to 391.320 concerning beneficial ownership as between parties, or as between parties and P.O.D. payees or beneficiaries of multiple-party accounts, are relevant only to controversies between these persons and their creditors and other successors, and have no bearing on the power of withdrawal of these persons as determined by the terms of account contracts. The provisions of KRS 391.335 to 391.360 govern the liability of financial institutions who make payments pursuant thereto, and their set-off rights.

The Browns maintain that these statutes limit Brown's (and hence the Cabinet's) interest in the accounts to his net contributions thereto unless it can be shown that he and Darla intended something different. The trial court, on the other hand, ruled that these statutory provisions do not apply in this case because the chapter in which they appear, which is entitled **Descent and Distribution**, applies only to situations involving a death. With a significant proviso, we agree with the Browns.

While it is true that courts interpreting statutes need be sensitive to their context, the more fundamental rule is that courts give effect to the statute's plain meaning. *Bailey v. Reeves, supra.* The codification of statutes, moreover, by means of titles and chapter headings does not alter that plain meaning. KRS 446.140. Property interests in particular, which arise in so many different legal contexts, defy neat statutory compartmentalization. That property interests in addition to those pertaining to decedents and their estates should be addressed in KRS Chapter 391 is no less to be expected than that provisions regarding decedents will be ad-

dressed in Chapters other than 391.[4] *Cf. In re Overton, supra* (construing a statute similar to ours). The trial court thus erred, by failing to apply to this case the above-quoted joint-account provisions.

Those provisions expressly distinguish between the customers' agreement with the bank concerning each joint tenant's authority to draw on the joint account, and the ability of creditors to reach account funds contributed by a non-debtor joint tenant. Courts are obliged, therefore, to consider that distinction. Contrary to Brown, however, who naturally favors, a presumption that he held no interest in Darla's wages, we agree with those courts, such as the Hawaii court cited above, that have held that a party to a joint account may, for attachment and execution purposes, initially be presumed to own the entire joint account. Upon notice and objection, however, the debtor or any third-party account tenant may rebut that presumption by proof of separate net contributions to the account and an intention that the non-contributor's use of the other's contributions be limited. 11 A.L.R.3d at 1476 § 8 (1967, Supp.1999). The parties in this case stipulated that the Browns contributed to their joint checking accounts in particular net amounts. If Brown can further show that Darla was sufficiently removed from Brown's indebtedness or that Brown and Darla mutually understood that Brown would not subject her portion of the account to such a risk, then garnishment of Darla's share of the accounts would be inappropriate. Accordingly, we must vacate this portion of the trial court's judgment and remand for additional findings on the extent of Brown's ownership of the joint accounts and the extent otherwise to which the joint ac-

counts are vulnerable to the order of garnishment.

*Procedural Questions*

We need, finally, to address some procedural matters. First, Darla participated before the trial court and has attempted to join this appeal even though she has never formally become a party. Her right to intervene in the appeal is anything but assured. *Pearman v. Schlaak,* Ky., 575 S.W.2d 462 (1978). To be sure, Darla's claimed interest in the garnisheed accounts makes her intervention in the proceedings appropriate. CR 19.01. The better practice, however, is for her formally to intervene before the trial court. CR 24.01. Our remand of this case will give her an opportunity to do so.

Next, the Cabinet maintains that Brown waived his right to object to the garnishment by failing to abide by the terms of the garnishment order. Pursuant to KRS 425.501 and CR 69.02, that order instructed the garnishee banks to forward a copy of the order to Brown. It also, apparently for the sake of administrative efficiency, advised Brown that he might request a hearing to challenge the order provided he file his request "within ten (10) days of the Garnishee's Date of Receipt...." The date of receipt was July 25, 1997, and Brown's notice of exceptions to the order was not filed until August 6, 1997. The Cabinet complains that Brown's notice was untimely and was also defective in that it did not expressly request a hearing. The Cabinet's complaints merit only brief comment.

As the trial court noted, neither of these particular requirements is contained in CR 69.02.[5] They are incorporated in

---

4. See for example KRS 381.120.

5. CR 69.02 provides in part as follows:

Except for child support arrearages, where wages are garnisheed, the attorney for the party in whose behalf the order of

the standard garnishment order to facilitate processing. Because these requirements exist only for the convenience of the trial court, the trial court is precluded from enforcing them in so strict a manner as to be inconsistent with CR 69.02, and, of course, is afforded broad discretion to enforce them leniently. *West v. Goldstein*, Ky., 830 S.W.2d 379 (1992); *Ready v. Jamison*, Ky., 705 S.W.2d 479 (1986). That is what it chose to do here. Because the debtor's notice from the garnishee was by mail, the court read the ten-day requirement as including a three-day notice period, (CR 6.05), by virtue of which Brown's exceptions were timely. The court construed the order's "request a hearing" provision to require only that the debtor's exceptions include reasons therefore sufficient to raise a genuine issue. Brown's exceptions clearly did. These rulings in no way exceeded the trial court's broad discretion to manage its own docket.

### Conclusion

In sum, we are persuaded that KRS 427.010(2) does not create a true exemption and thus does not shield Brown's wages from garnishment after they have passed from his employer's control. We are also persuaded that KRS 391.310 limits, at least potentially, Brown's ownership of the checking account he shares with his wife and thus limits, potentially, the extent to which the account may be garnished. Brown and his wife (after proper intervention) must therefore be afforded an opportunity to prove that such a limitation exists.

For these reasons, we reverse in part and vacate in part the March 12, 1998, and January 22, 1998, orders of Franklin Circuit Court, and remand for additional proceedings consistent herewith.

ALL CONCUR.

wage garnishment was issued, or the clerk of the court if such party has no attorney of record, shall safely hold the garnisheed funds in escrow for a period of fifteen (15) days from the issuance date of the employer's garnishment check. If the debtor files an objection within that period, the funds shall continue to be held until the court rules upon the objection. If an exemption is asserted and a hearing held, the attorney or clerk of the court shall disburse the garnisheed funds as ordered by the court. If no exemption is asserted the attorney or clerk of the court shall after the fifteen (15) day period disburse the funds to the party in whose behalf the order of garnishment was issued.