**Arnold PERKINS, Appellant (Defendant),**

v.

**James F. KOCHER, Appellee (Plaintiff).**

No. 27A02–8708–CV–342.

Court of Appeals of Indiana, Second District.

Dec. 13, 1988.

Patrick J. O'Connell, Marion, Louis Rosenberg, Indianapolis, for appellant.

BUCHANAN, Judge.

## CASE SUMMARY

Appellant-defendant Arnold Perkins (Perkins) appeals from an order of the Grant County Court directing him to make payments of $200 per month to the court to satisfy a money judgment against him obtained by appellee-plaintiff James F. Kocher (Kocher), claiming the trial court's order violates Federal and State exemption statutes.

We reverse in part and affirm in part.

## FACTS

Kocher sued Perkins on a contract for legal services and obtained a judgment in the amount of $1,918.94 plus costs on February 22, 1985.

A proceeding supplemental hearing was held on October 7, 1985, when evidence was presented that Perkins' only monthly income was from social security disability benefits ($550.00), pension benefits ($235.00) and disability insurance benefits ($86.09). Perkins testified he owned no real estate and no assets which were not exempt from execution.

On October 16, Kocher filed a request for a garnishment order to be served on General Motors Corporation (General Motors). On October 18, 1985, the trial court issued a garnishment order, requiring General Motors to pay to the sheriff of Grant County $260.50 per month. No summons to General Motors was ever issued, and General Motors never complied with or responded to the garnishment order.

On November 8, 1985, Perkins filed a motion to quash Kosher's request for a garnishment order, claiming that his income was exempt from attachment or garnishment. The trial court subsequently denied Perkins' motion to quash on March 3, 1987, and further ordered him to begin making payments to the clerk of the court in the amount of $200.00 per month beginning March 20, 1987.

Perkins failed to comply with this order and on April 8, 1987, Kocher asked that Perkins be held in contempt for failing to make the payments. The trial court summoned Perkins to appear on April 30, 1987, to show cause why he should not be held in contempt for failure to make the payments. Perkins then filed a motion to correct errors on April 29, 1987, directed to the trial

court's denial of his motion to quash garnishment order and subsequent order to him to make payments into the court. The trial court denied his motion to correct errors but granted his motion to stay the garnishment and contempt proceedings pending appeal.

## ISSUES

Perkins raises two issues:

1. Did the trial court err in issuing the show cause order?

2. Was the trial court's order directing Perkins to make monthly payments toward the satisfaction of the money judgment a violation of Federal and State exemption statutes?

## DISCUSSION

■ Perkins is only required to establish prima facie error to obtain reversal of the judgment as Kocher has failed to file an appellee's brief. *Sharp v. Jones* (1986), Ind.App., 497 N.E.2d 593.

ISSUE ONE—Did the trial court err in issuing the show cause order?

PARTY'S CONTENTION—Perkins asserts error in the issuance by the trial court of a citation requiring him to show cause why he should not be held in contempt of court, claiming that under Indiana law, contempt proceedings may not be used to enforce a money judgment.

CONCLUSION—Perkins has failed to raise a justiciable issue.

■ This court will only decide real questions or controversies, and not moot or abstract propositions. *International Harvester Co. v. Snavely* (1959), 129 Ind.App. 567, 158 N.E.2d 802. When an issue raises no cause or controversy, any judgment entered thereon is merely advisory. *Indiana Bureau of Motor Vehicles v. Zimmerman* (1985), Ind., 476 N.E.2d 114.

The trial court has not in fact cited Perkins for contempt of court or even held a hearing on the matter. The argument that Perkins might suffer injury or an adverse judgment on this matter in the future fails to present an actual controversy requiring

appellate relief. *See In re Visitation of J.O.* (1982), Ind.App., 441 N.E.2d 991.

ISSUE TWO—Was the trial court's order directing Perkins to make monthly payments into court violative of Federal and State exemption statutes?

PARTY'S CONTENTIONS—Perkins argues that his social security, pension, and disability insurance benefits were statutorily exempt from legal process, and that it made no difference that these benefits had already been paid to him.

CONCLUSION—The trial court erred in directing Perkins to make payments into court from his social security and pension benefits, when it was shown that those benefits were exempt from legal process; but Perkins failed to make the requisite showing regarding the disability benefits.

■ Federal law provides a specific exemption for monies received under the Social Security Act (the Act):

"(a) The right of any person to any future payment under [the Social Security Act] shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under [the Social Security Act] shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law."

42 U.S.C. § 407(a) (1988). Thus, this statute unequivocally provides that money paid as benefits under the Act is exempt from attachment or legal process. *See Bennett v. Arkansas* (1988), — U.S. —, 108 S.Ct. 1204, 99 L.Ed.2d 455; *Philpott v. Essex County Welfare Bd.* (1973), 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608; *Finberg v. Sullivan* (3d Cir.1980), 634 F.2d 50.

There is an abundance of cases holding that this exemption, or a similar exemption found under state law, applies even after the benefits are in the debtor's hands or have been received and placed in a bank account. *E.g., Bennett, supra; Philpott, supra; Dionne v. Bouley* (1985 1st Cir.), 757 F.2d 1344; *Finberg, supra; Anderson v. First Nat'l Bank* (1979), 151 Ga.App. 573, 260 S.E.2d 501; *Fayette County Hosp.*

*v. Reavis* (1988), 169 Ill.App.3d 246, 119 Ill.Dec. 937, 523 N.E.2d 693; *Matthews v. Lewis* (1981), Ky., 617 S.W.2d 43; *Havelock Bank v. Hog Confinement Sys., Inc.* (1983), 214 Neb. 783, 335 N.W.2d 765; *cf. Porter v. Aetna Casualty & Sur. Co.* (1962), 370 U.S. 159, 82 S.Ct. 1231, 8 L.Ed.2d 407 (veterans' benefits); *Usery v. First Nat'l Bank* (9th Cir.1978), 586 F.2d 107 (contrasting the Consumer Credit Protection Act which does not protect benefits in the hands of employee); *Daugherty v. Central Trust Co.* (1986), 28 Ohio St.3d 441, 504 N.E.2d 1100 (state law exemption for certain personal earnings).

So Perkins' argument that his social security funds are exempt from any legal process even after he received them is valid.

■ Similarly, the pension benefits which Perkins received from General Motors are exempt from garnishment, attachment, or legal process. The benefits were received pursuant to a General Motors Pension Trust Agreement (the Plan), which contained an anti-alienation clause prohibiting garnishments, levies, or other attachments. *Record* at 41–42. The Plan was covered by the Federal Employee Retirement Income Security Act of 1974 (ERISA).[1] *Record* at 41–42.

Under ERISA, "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). Also, under the Internal Revenue Code, a trust will not constitute a qualified trust unless "the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated." 26 U.S.C. § 401(a)(13) (1988). A Treasury Regulation goes further and requires that, under the above code section, the trust provide that benefits under the plan may not be "anticipated, assigned (either at law or in equity), alienated, or subject to attachment, garnishment, levy, execution or other legal or equitable process." Treas.Reg. § 1.401(a)(13)(b)(1) (1978).

These statutes and the regulation clearly provide that benefits derived from a plan qualified under ERISA may not be reached by legal or equitable process, *see Tenneco, Inc. v. First Virginia Bank* (4th Cir.1983), 698 F.2d 688; *Vink v. SHV North America Holding Corp.* (S.D.N.Y.1982), 549 F.Supp. 268; *Cartledge v. Miller* (S.D.N.Y. 1978), 457 F.Supp. 1146; *Christ Hosp. v. Greenwald* (1980), 82 Ill.App.3d 1024, 38 Ill.Dec. 469, 403 N.E.2d 700; *Knapp v. Johnson* (1980), Minn., 301 N.W.2d 548, but they do not specifically address whether such funds are exempt once they are paid to the employee. In both *Shrader v. Maultz* (1978), 58 Ill.App.3d 484, 16 Ill.Dec. 44, 374 N.E.2d 819, and *Freedom Fin. Co. v. Fleckenstein* (1971), 116 N.J.Super. 428, 282 A.2d 458, the courts held that monies derived from pension payments under the Railroad Retirement Act were exempt from legal process in the hands of the pensioner.

■ The primary purpose of ERISA is to protect people who depend on these benefits for financial independence after they retire. *Christ Hosp., supra.* It would be illogical to conclude that benefits are protected only until the moment they are paid to the pensioner, probably when they are most needed. Such benefits are analogous to benefits received under the Railroad Retirement Act and social security disability plans and should therefore receive the same treatment as long as they retain the "quality of moneys" and can be easily identified as payments from exempt funds, and have not yet become permanent investments. *See Philpott, supra; Porter, supra; Anderson, supra; Fayette County Hosp., supra; Shrader, supra; Matthews, supra.*

The conclusion is that the exemption applies even after the funds are received by Perkins.

■ Perkins' final assertion is that his monthly disability insurance benefits received from Metropolitan Life Insurance Company are exempt under Ind.Code 27–1–12–29 (1982). Group life insurance proceeds are protected by IC 27–1–12–29:

---

1. 29 U.S.C. §§ 1001–1381 (1982).

"No policy of group insurance nor the proceeds thereof, when paid to any employee or employees, shall be liable to attachment, garnishment, or other process, or to be seized, taken, appropriated or applied to any legal or equitable process or operation of law, to pay any debt or liability of such employee, or his beneficiary, or any other person who may have a right thereunder, either before or after payment, nor shall the proceeds thereof, where not payable to a named beneficiary, constitute a part of the estate of the employee for the payment of his debts."

However, we are prevented from making an informed determination as to whether the disability benefits which Perkins receives fall within the above statute or any other relevant exemption statutes. There is *no* evidence in the record which indicates whether these benefits are proceeds from a group insurance policy. The record merely reveals that Perkins received disability insurance benefits, but does not include the policy under which the benefits were paid or information as to when and why the disability payments commenced.

As a general rule, a debtor who is relying on an exemption has the burden to prove that he is within the class of persons entitled to the exemption and that the property he claims as exempt falls within the exemption statute. 35 *C.J.S. Exemptions* § 160 (1960). Perkins has failed to show that his disability benefits fall within the exemption he claims.

It is the appellant's duty to present this court with a proper record which evidences the error claimed. *Raymundo v. Hammond Clinic Ass'n* (1983), Ind., 449 N.E.2d 276. We cannot presume any facts in favor of the appellant's claim of error, and must make all presumptions in favor of the trial court's ruling. *Id.* We must conclude the record on appeal fails to support the exemption which Perkins claims as to the disability payments.

Reversed as to the social security and pension benefits and affirmed as to the disability benefits and remanded to the trial court for proceedings consistent herewith. Costs assessed one-third to Perkins and two-thirds to Kocher.

SULLIVAN and STATON, JJ., concur.