Harold BROSAMER, Appellant
(Defendant),

v.

Donald E. MARK and Cheryl A. Mark,
Appellees (Plaintiffs),

and

Marion Independent Federal Credit
Union, Appellee (Garnishment
Defendant),

and

Bank One of Marion, Indiana, Appellee
(Garnishment Defendant).

No. 27A02–8712–CV–511.

Court of Appeals of Indiana,
Second District.

July 6, 1989.

Louis Rosenberg, UAW Legal Services Plan, Indianapolis, E. Dean Singleton, UAW–GM Legal Services Plan, Marion, for appellant.

BUCHANAN, Judge.

CASE SUMMARY

Appellant-defendant Harold Brosamer (Brosamer) appeals from orders of the Grant County Court freezing and gar-

nisheeing bank accounts consisting of Social Security retirement benefits and General Motors pension benefits, in order to satisfy a money judgment against him obtained by appellee-plaintiffs Donald and Cheryl Mark (the Marks), which accounts Brosamer claims are exempt under federal exemption statutes.

We reverse in part and affirm in part.

## FACTS

The facts reveal that the Marks obtained a judgment against Brosamer for unpaid rent in the amount of $718.00 plus costs on November 6, 1986. A proceeding supplemental hearing was held on September 24, 1987, at which time evidence was presented that Brosamer's only monthly income was from social security retirement benefits ($583.00), and General Motors pension benefits ($444.69). Brosamer averred he owned no real estate and no assets which were not exempt from execution.

On September 29, 1987, garnishment interrogatories were mailed to Marion Independent Federal Credit Union (Credit Union), where Brosamer had his General Motors pension benefits directly deposited, and Bank One of Marion, Indiana (Bank One), where his Social Security benefits were directly deposited. The interrogatories contained an order freezing each account. Orders garnisheeing each account were issued on November 9, 1987.

## ISSUE

Brosamer raises two issues on appeal which we consolidate as follows:

Were the trial court's orders freezing and garnisheeing Brosamer's accounts containing the General Motors pension and Social Security benefits violations of federal exemption statutes?

*PARTIES' CONTENTIONS*—Brosamer claims that federal exemption statutes prohibit the freezing and garnishment of his social security and pension benefits, even after they have been paid to him.

**1.** 29 U.S.C. §§ 1001–1461 (1982).

**2.** Only "The law of the Lord is perfect."—Psalms 19:7.

The Marks have not favored us with an appellee's brief.

*CONCLUSION*—Brosamer's social security benefits are exempt from legal process, but his pension benefits are not similarly protected.

As the appellees have not filed a brief, Brosamer is only required to establish prima facie error to obtain reversal of the judgment. *See Sharp v. Jones* (1986), Ind.App., 497 N.E.2d 593.

We turn first to the Social Security benefits and conclude that the trial court erred in freezing and garnisheeing the account which contained Brosamer's social security benefits. This account was exempt from legal process. In *Perkins v. Kocher* (1988), Ind.App., 531 N.E.2d 231, this court decided this precise question.

Federal law provides that monies received under the Social Security Act are exempt from execution, levy, attachment, garnishment, or other legal process. 42 U.S.C. § 407(a). In *Perkins*, we determined that the exemption applies even after the benefits are received by the debtor and placed in a bank account. *Perkins, supra,* at 233. Therefore, it was error for the trial court to freeze and garnish Brosamer's account at Bank One.

However, we must now conclude that Brosamer's pension benefits are not exempt from legal process. In *Perkins*, we determined that pension benefits in the pensioner's hands, which were received pursuant to a pension plan that was regulated by the Employee Retirement Income Security Act (ERISA)[1] were exempt from garnishment, attachment, or legal process. We now retreat[2] from that decision.

In *Perkins*, we analogized the pension benefits received from General Motors with those benefits received pursuant to the Railroad Retirement Act[3] and Social Security benefits, and concluded that the pension benefits should receive protection similar to

**3.** 45 U.S.C. § 231.

that which had been extended to those benefits. After further analysis, it appears that pension benefits are more akin to benefits received pursuant to a spendthrift trust.

The court's analysis in *In re Graham* (8th Cir.1984), 726 F.2d 1268, is persuasive. There the court considered whether pension benefits governed by ERISA qualify as benefits exempted by federal law under a provision of the federal bankruptcy statutes and relied upon the legislative history of the bankruptcy statute provision, which included a list that illustrated the types of federal benefits Congress intended to be exempt by the bankruptcy statutory provision in question. The list included social security benefits, veterans benefits, and annuities and pensions received pursuant to the Railroad Retirement Act. The conclusion was that private pension benefits were not intended to be covered by the statutory provision in question:

> "The pensions, wages, benefits and payments included in the illustrative list are all peculiarly federal in nature, created by federal law or related to industries traditionally protected by the federal government. *In sharp contrast, ERISA regulates private employer pension systems.*"

*Id.* at 1274 (emphasis supplied).

In *Shrader v. Maultz* (1978), 58 Ill. App.3d 484, 16 Ill.Dec. 44, 374 N.E.2d 819, it was determined that pensions received pursuant to the Railroad Retirement Act were protected even after they were paid to their beneficiaries: "[f]urther, the equal protection clause is not violated by the fact that benefits paid under a pension plan for public employees may be immune from garnishment, *while private pension benefits are not.* There are reasonable and conceivable bases for differentiating between private and public annuitants and pensioners in regard to the granting of garnishment and attachment exemptions." *Id.* at 487, 16 Ill.Dec. at 46–47, 374 N.E.2d at 821–22. (Emphasis supplied).

An examination of relevant federal law is also instructive. The Social Security Act provides in part:

> "(a) The right of any person to any future payment under [the Social Security Act] shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under [the Social Security Act] shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law."

42 U.S.C. § 407(a)(1988).

The Railroad Retirement Act provides in part:

> "[N]o annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment or other legal process under any circumstances whatsoever...."

45 U.S.C. § 231m(a).

ERISA, however, provides that "[e]ach *pension plan shall provide* that benefits *provided under the plan* may not be assigned or alienated," 29 U.S.C. § 1056(d)(1). In comparison, the Social Security Act and the Railroad Retirement Act *provide* the protection afforded to their benefits, while ERISA requires *the plan to provide* the protection for the benefits. The ERISA provision can properly be characterized as describing pension plans more in the nature of spendthrift trusts.

The court in *Christ Hospital v. Greenwald* (1980), 82 Ill.App.3d 1024, 38 Ill.Dec. 469, 403 N.E.2d 700, also characterized pension plans as spendthrift trusts. Further, the Treasury Regulations which Brosamer cites, provide:

> "Under section 401(a)(13), a *trust* will not be qualified unless *the plan of which the trust is a part provides* that benefits provided under the plan *may not be anticipated,* assigned (either at law or in equity), alienated or subject to attachment, garnishment, levy, execution or other legal or equitable process."

Treas.Reg. § 1.401(a)(13)(b)(1) (1978) (emphasis supplied).

■ In general, a spendthrift trust is one in which the beneficiary is unable to transfer, assign, or alienate his right to future payments of income or principal,

and which provides the beneficiary's creditors are unable to subject the beneficiary's interest to the payment of their claims while in the hands of the trustee. *See* Bogert, *Trusts* § 40 (6th ed.1987); 76 Am. Jur.2d *Trusts* § 148 (1975); 89 C.J.S. *Trusts* § 22 (1955). ERISA requires that private pension plans include a restraint against alienation, but goes no further so as to exempt the benefits once they are paid to the beneficiary.

When funds from a spendthrift trust are paid to a beneficiary, those funds are no longer protected by the trust. As Professor Bogert observed:

"Such a trust does not involve any restraint on alienability or creditors rights with respect to property after it is received by the beneficiary from the trustee, but rather is merely a restraint with regard to his rights to future payments under the trust."

Bogert, *Trusts* § 40 at 148–49 (6th ed. 1987). *See also* 76 Am.Jur.2d *Trusts* § 173 (1975); 90 C.J.S. *Trusts* § 198 (1955).

Because of the differences between private pension benefits and public pension benefits received pursuant to a federal statute, and because we do not believe Congress intended ERISA to extend spendthrift trust protection to funds after they were paid to beneficiaries, we conclude the account which contained Brosamer's pension benefits was properly frozen and garnished.

The trial court's judgment with respect to the pension benefits is affirmed. The judgment with respect to the social security benefits is reversed.

SHIELDS, P.J., and SULLIVAN, J., concur.