See also, 89 F.3d 1316.

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Carol J. LAMPIEN Defendant–
Appellant.**

**No. 98–1424.**

United States Court of Appeals,
Seventh Circuit.

Submitted July 6, 1999.*

Decided Jan. 10, 2001.

---

* This successive appeal has been submitted to the panel that heard Lampien's original appeal, pursuant to Operating Procedure 6(b). Judge Eschbach, who was a member of the original panel, retired from judicial service while this appeal was under advisement, and Judge Bauer has replaced him on the panel.

After reviewing the briefs and the record, the panel is unanimously of the view that oral argument is unnecessary. Accordingly, the appeal has been submitted on the briefs and the record alone. *See* Fed. R.App. P. 34(a); Circuit Rule 34(f).

Before BAUER, MANION, ROVNER, Circuit Judges.

*ORDER*

This is the third time that Carol Lampien is before us challenging a district court order that requires her to make monthly payments in satisfaction of her restitution obligation. In July of 1995, Lampien pleaded guilty to embezzling nearly half a million dollars from her employer of 42 years, Wausau Insurance Company ("Wausau"). Later that year, the district court sentenced Lampien to a two-year prison term and ordered her to make full restitution to Wausau in the amount of $498,972.94. R. 8, 22. We vacated that restitution order in Lampien's first appeal, reasoning that the record did not support the conclusion that Lampien had the means to make complete restitution. *United States v. Lampien*, 89 F.3d 1316, 1322–24 (7th Cir.1996). We also held that the district court had exceeded its authority under the Victim and Witness Protection Act, 18 U.S.C. § 3663–3664 (the

"VWPA"), when it ordered Lampien to deed her home to Wausau. 89 F.3d at 1322.

On remand, the district court again compelled Lampien to make full restitution pursuant to the stipulation of the parties (*see* R. 79), who anticipated that liquidation of assets other than Lampien's residence (including many pieces of jewelry and the home of Lampien's deceased mother) would be sufficient to satisfy the obligation. R. 88, 89. Believing (correctly as it turns out), that there might be a shortfall in the sale of Lampien's assets, the court also ordered Lampien to make monthly payments of $600 toward her restitution obligation while incarcerated and $300 after she was released. R. 88 at 5; R. 89 at 14. The court's determination that Lampien had the ability to make monthly payments of $600 while incarcerated was based, in part, upon its finding that her residence had a rental value of $450 per month. R. 88 at 5; R. 89 at 13. The court ordered Lampien to make immediate arrangements to lease the house to a paying tenant in the event that her adult son, who was living in the house free of charge, declined to begin paying rent. R. 88 at 6; *see also* R. 89 at 18–19.

Lampien appealed, and in an unpublished order, we again vacated the restitution obligation. *United States v. Lampien*, No. 96–3337, 132 F.3d 37 (table), 1997 WL 800850 (7th Cir. Dec. 31, 1997). We found no authority that would permit a court to compel a defendant to employ her home as a rental property. We therefore vacated that portion of the judgment. *See* 1997 WL 800850, at *2. We agreed, however, that the reasonable rental value of one's residence could be taken into account as one of the defendant's financial resources in assessing her ability to make restitution.

Therefore, although the court lacks the power to *order* Lampien to rent her

home, it still may consider the income that Lampien reasonably could earn through the rental of her home while incarcerated in deciding what payments she can presently make in restitution. Lampien remains free not to charge her son rent or to lease her home to a third party; however, her decision not to access the reasonable rental value of her home would not relieve her of the obligation to make any monthly payments that the district court has properly found her capable of making based in part on the income reasonably available to her from this financial resource.

*Id.* at *2 (emphasis in original). Even so, we were troubled by the paucity of evidence in the record confirming that Lampien's home indeed did have a market rental value of $450 per month. *Id.* at *2–*3. Because Lampien could not, while incarcerated, make the court-ordered payments of $600 per month without the prospective rental income attributed to her home, *see id.* at *3, we vacated the restitution portion of the judgment and remanded for further proceedings.

Lampien had completed her prison term by the time the court reconsidered the question of restitution in February of 1998. At that time, the court also had a more realistic picture of the restitution that was within Lampien's capacity to make. Lampien's jewelry and other personal property had been sold, and the proceeds from those assets, together with cash payments previously ordered by the court, cash seized from Lampien's home, and the transfer of an annuity, came to only $142,557—much less than the parties had anticipated. *See* R. 152 at 5; R. 153 at 21, 37. Another $90,000 was expected to be realized from the sale of the home which had belonged to Lampien's deceased mother. R. 152 at 5; R. 153 at 37. The court also took into consideration that Lampien's own home was paid for and had an estimated value of $58,900. R. 152 at 5; R. 153 at 40. Finally, the court found that Lampien had the means to make payments of $450 per month over the three-year period of post-incarceration, supervised release, which would total $16,200. R. 152 at 6–7; R. 153 at 34, 44. The court thus determined that Lampien was capable of making restitution in the total amount of $307,657. R. 152 at 5.

In calculating the income that was available to Lampien for purposes of making the monthly payments toward her restitution obligation, the court found that Lampien had one actual and two potential sources of income. First, Lampien was already receiving a pension from Wausau in the amount of approximately $920 per month. R. 152 at 6. Second, although she had not yet applied Social Security benefits, at 62 years of age, Lampien was eligible for them, and by the court's estimation they would amount to $716 per month. R. 152 at 6; R. 153 at 25–26. Finally, noting that Lampien's adult son continued to live with Lampien rent-free, the court determined that Lampien could rent out a room in her home (if not to her son, then to someone else), and it assigned a potential rental income to the house of $200 per month. R. 152 at 6; R. 153 at 24–25, 30, 40. The court based that estimate in large part upon an Internet search performed by the prosecutor, which indicated that the minimum rent for a one-bedroom apartment in Milwaukee was $250 per month. *See* R. 200, attachment, R. 153 at 30. The court therefore found that Lampien had at her disposal monthly income of about $1,837. R. 152 at 6; R. 153 at 34. The court found that $1,075 was sufficient to cover Lampien's reported expenses (less certain items that it considered to be luxu-

ries). R. 152 at 6; R. 153 at 33.[1] This left $762 per month available to Lampien in discretionary income—more than enough to cover the $450 per month in restitution payments. R. 152 at 6–7; R. 153 at 34. Even if the potential rental income of $200 per month were excluded from Lampien's prospective resources, the court pointed out, she would still have available to her $562 each month, which was adequate to cover the restitution payment with $112 to spare for unforeseen expenses. R. 153 at 34.

Lampien's appeal focuses on the requirement that she make monthly installment payments of $450 toward her restitution obligation, payments that she contends are beyond her means. She makes three specific arguments in that regard. First, she maintains that the court lacked authority to include in her available income the rent that a hypothetical boarder might pay her, and that the rental value $200 per month lacks the requisite evidentiary support that we called for in deciding the previous appeal. She next suggests that it was error for the court to include among her financial resources Social Security benefits, which she was not then, and purportedly still is not, receiving. Third, she contends that it was improper for the court to consider pension benefits in calculating the income from which she could make restitution, given that such benefits are generally protected against alienation by the Employee Retirement Income Security Act, 29 U.S.C. § 1056(d)(1) ("ERISA"). Obviously, if all three categories of income are excluded from the calculus, then monthly restitution payments of $450 are not realistic. We take each point in turn.

1. *Prospective rental income.* In the previous appeal, we found no fault with the district court's decision to include within her financial resources the income that Lampien might realize from her home if she elected to rent it to a tenant while incarcerated, rather than allowing her son to live there free of charge. We were concerned solely with the lack of evidentiary support for the notion that the residence in fact could be rented at $450 per month. The Internet listings that are now part of the record lend some support to the notion that one cannot rent a one-bedroom apartment in Milwaukee for less than $250 per month. R. 200, attachment. Of course, Lampien herself, having served her prison term, is now living in the house. That fact, as Lampien points out, puts prospective tenants in the position of boarders, who typically pay less for a room in someone else's residence than they do for the right to have an entire residence to themselves—although we hasten to add that the district court considered this point. *See* R. 153 at 25. Lampien's obligation to realize rental income from the house is also less clear when she is using the house as her own residence. At this juncture, however, we need not resolve the propriety of including $200 per month in rental income among Lampien's financial resources. As the district court pointed out, even if that amount is excluded from the calculation, Lampien still has more than enough discretionary income to handle the monthly restitution obligation. R. 153 at 34.

2. *Social Security benefits.* Emphasizing that she was not yet receiving Social Security benefits when the district

---

1. Lampien suggests in her reply brief that the district court improperly excluded some items from her list of monthly expenses. Lampien Reply Br. 3. We need not consider arguments raised for the first time in the appellant's reply brief, however. *E.g., United States v. Robbins,* 197 F.3d 829, 837 n. 3 (7th Cir. 1999).

court re-sentenced her, and indeed that she still is not receiving them, Lampien argues that the district court could not include these benefits in the income from which she could make restitution. If there were any real doubt about Lampien's ability to receive Social Security benefits, she might have a point. But there is no genuine question that Lampien, having attained the age of 62 and having worked for more than 40 years, meets the two principal criteria for Social Security benefits. *See* R. 153 at 11–12.[2] It is up to her, of course, to apply for such benefits. But we are given no reason to believe that these benefits are actually unavailable to her, and she does not quarrel with the district court's estimation of the amount of benefits she will receive if and when she applies. Consequently, we find no error in the district court's decision to include these estimated benefits among her financial resources.

■ 3. *Pension benefits.* The district court's restitution order does not impose any obligation on the pension plan from which Lampien receives benefits; her pension benefits are instead implicated only after she has actually received those benefits. *See* R. 153 at 35. As a result, the restitution order arguably poses no genuine conflict with ERISA's anti-alienation provision. *See Wright v. Riveland,* 219 F.3d 905, 919–21 (9th Cir.2000); *Robbins ex rel. Robbins v. DeBuono,* 218 F.3d 197, 203–04 (2d Cir.2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 760, 148 L.Ed.2d 662 (2001), and *cert denied,* —— U.S. ——, 121 S.Ct. 760, 148 L.Ed.2d 662 (2001); *Trucking Employees of N. Jersey Welfare Fund, Inc. v. Colville,* 16 F.3d 52, 55–56 (3d Cir.1994); *Guidry v. Sheet Metal Workers Int'l Ass'n,* 10 F.3d 700, 710 (10th Cir.

1993), *aff'd in relevant part on reh'g,* 39 F.3d 1078, 1081, 1082–83 (10th Cir.1994) (en banc), *cert. denied,* 514 U.S. 1063, 115 S.Ct. 1691, 131 L.Ed.2d 556 (1995); *contra, United States v. Smith,* 47 F.3d 681, 683–84 (4th Cir.1995). The government contends that in any event, it *does* have the authority to reach Lampien's pension benefits directly for purposes of her restitution obligation. The pre–1996 version of the VWPA that applies here authorizes the government to enforce a restitution order "in the manner provided for the collection and payment of fines in subchapter B of Chapter 229 of this title[.]" 18 U.S.C. § 3663(h)(1)(A) (1995); *see Lampien,* 89 F.3d at 1320. According to the government, its levy power with respect to criminal fines extends to private, ERISA-qualified pension plans; consequently, in the government's view, the district court did not abuse its discretion when it took Lampien's pension benefits into consideration. We need not resolve the question, however. The Social Security benefits for which Lampien is eligible would more than suffice to cover the monthly restitution payments. Therefore, nothing in the district court's restitution order compels Lampien to make restitution from her pension benefits per se. Granted, if Lampien is not yet receiving Social Security benefits, then as a practical matter she may find that she will be forced to use some portion of her pension benefits to make restitution. Yet, so far as the record reveals, that is a matter of her choosing. As we have already indicated, we have been given no reason to believe that Lampien is actually ineligible to receive Social Security benefits and would not receive them if she

---

**2.** Her eligibility at age 62, of course, would be for reduced Social Security benefits, rather than the full benefits to which she would be entitled if she waited several more years to

apply. Lampien raises no issue as to the propriety of taking into account the reduced benefits, however.

applied.[3]

In sum, the monthly pension benefits that Lampien is receiving, coupled with the monthly Social Security benefits that she is apparently eligible to receive, are more than sufficient to cover Lampien's monthly expenses as well as $450 per month in restitution payments. As a result, we find no error in the district court's decision to require Lampien to make such payments.

AFFIRMED

**3.** We acknowledge that the Social Security Act contains its own anti-alienation provision. *See* 42 U.S.C. § 407(a). However, as is true with respect to Lampien's pension benefits, the district court's restitution order does not purport to levy or assign Lampien's prospective Social Security benefits. The court merely took those prospective benefits into consideration in determining what Lampien reasonably could afford to pay in the way of monthly restitution payments. Our opinion in *United States v. Eggen*, 984 F.2d 848 (7th Cir.1993), discloses that this does not run afoul of the Social Security Act's anti-alienation provision. The defendant in *Eggen* was ordered to make restitution during the period of his post-incarceration probation. After he was released from prison, the defendant received a lump-sum payment of retroactive Social Security benefits. Rather than use those funds to make good on his restitution obligation, however, the defendant chose to turn the entire sum over to his parents, purportedly in satisfaction of an outstanding loan from them. Subsequently, the district court revoked his probation, relying on the fact that the defendant had given all of the Social Security payment to his parents as evidence that he had not made a good-faith effort to comply with the restitution order. The defendant appealed, but we dismissed the appeal as legally frivolous. *Id.* at 850. We reasoned that notwithstanding the anti-alienation provision, "once [the benefits] are paid over to the recipient, as here, he can use them to satisfy his preexisting obligations,"—including restitution. *Id.*

It is worth noting that the anti-alienation provision was not brought to the district court's attention in *Eggen*. *Id.* Consequently, our review in *Eggen* (had we elected to dispose of the appeal on the merits after full adversarial briefing, rather than dismissing the appeal as frivolous), would have been confined to a search for plain error alone. *See id.* We were confident that the district court committed no such error in finding that the defendant could have resorted to his Social Security benefits in order to satisfy his restitution obligation. *Id.* Here, too, Lampien has not invoked the Social Security Act's anti-alienation provision. As in *Eggen*, then, we do not find any plain error in considering her prospective Social Security benefits.