**Rebecca D. KAYS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 42A05–1007–CR–504.

Court of Appeals of Indiana.

April 21, 2011.

Transfer Granted July 19, 2011.

Cara Schaefer Wieneke, Wieneke Law Office, P.C., Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, James E. Porter, Deputy Attorney General, Indianapolis, IN, for Attorneys for Appellee.

## OPINION

MAY, Judge.

Rebecca Kays appeals an order that she pay restitution as part of her probation for Class B misdemeanor battery. She argues the trial court violated Ind.Code § 35–38–2–2.3(a)(5) by ordering her to pay restitution without inquiring into her ability to pay and by failing to establish the manner and time of payment. The trial court did not inquire adequately into Kays' ability to pay. Neither was there any evidence Kays had income other than social security disability benefits, which may not be assigned by "legal process" pursuant to 42 U.S.C.A. § 407(a). Nor did the trial court adequately indicate the manner and timeframe for payment as required by Ind. Code § 35–38–2–2.3(a)(5).

We further note that, pursuant to the reasoning of *Stanley v. Walker*, 906 N.E.2d 852, 858 (Ind.2009), *reh'g denied*, a trial court ought not simply base an order of restitution on a hospital bill without determining whether that bill reflects the "actual cost" to the victim. As the record provided to us does not reflect whether the parties submitted evidence enabling the court to make such a determination, we direct the trial court on remand to, if such evidence exists, revisit the documentation submitted as to the victim's damages and determine whether the amount of restitution ordered reflects the amount actually paid by the victim.

We reverse and remand.

## FACTS AND PROCEDURAL HISTORY[1]

Kays and her neighbor, Cheryl Wolfe, had feuded over their property line for some time. Eventually, a surveyor determined the boundary and installed posts to mark it. When Kays discovered Wolfe had placed PVC pipes over each survey post, Kays decided to drive posts into her own yard next to the surveyor's posts. Wolfe photographed Kays installing posts, and Kays then pulled the PVC pipes off the posts and began throwing them in Wolfe's yard. One of the pipes struck Wolfe in the leg, causing a laceration that required stitches.

The State charged Kays with Class B misdemeanor battery.[2] After a bench tri-

al, the court found Kays guilty and sentenced her to 180 days in the Knox County Law Enforcement Center. The court suspended her sentence and ordered her, as a term of probation, to pay restitution of $1496.15 to Wolfe.

## DISCUSSION AND DECISION

### 1. *Restitution Order*

 A trial court may order "restitution or reparation to the victim of the crime for damage or injury that was sustained by the victim." Ind.Code § 35–38–2–2.3(a)(5). An order of restitution is within the trial court's discretion, and we will reverse its decision only on an abuse of that discretion. *Bockler v. State*, 908 N.E.2d 342, 348 (Ind.Ct.App.2009). An abuse of discretion occurs when the trial court misinterprets or misapplies the law. *Id.*

### a. *Ability to Pay*

 If restitution is a condition of probation, "the court shall fix the amount, which may not exceed an amount the person can or will be able to pay." Ind.Code § 35–38–2–2.3(a)(5). The statute requires the trial court to make such an inquiry, but does not specify how the court is to do so. *Smith v. State*, 655 N.E.2d 133, 134 (Ind. Ct.App.1995), *trans. denied*. The trial court should consider factors such as the defendant's current financial status, health, and employment history.[3] *Champlain v. State*, 717 N.E.2d 567, 570 (Ind.1999).

---

1. We held oral argument on this case on March 4, 2011, as part of the Women's Bench Bar Retreat. We thank the Women's Bench Bar for their hospitality and compliment counsel on their excellent advocacy.

2. Ind.Code § 35–42–2–1(a).

3. According to the Chronological Case Summary (CCS), the court ordered preparation of a pre-sentence investigation (PSI). At sen-

tencing, counsel for both parties indicated they had no changes or corrections to that report. Kays did not include the PSI in her Appellant's Appendix. The State noted in its brief that Kays had not provided the PSI, (Br. of Appellee at 4, fn. 1), but it chose not to provide the document in an Appellee's Appendix. *See* Ind. Appellate Rule 50(B)(2) (providing Appellee may file an appendix to supplement the appendix filed by the Appellant). Thus, it cannot be determined whether the

At Kays' sentencing hearing, the court did not directly ask Kays if she was able to pay restitution, but Kays' counsel argued:

> Defense Counsel: [T]he sum of money is well beyond what [Kays] could possibly ever pay. She is on ... her sole source of income is Social Security. How much do you get a month?
>
> Defendant: $674.00
>
> Defense Counsel: $674.00. And she has ... it's disability, so she can't work. She's living in an apartment above her mother's house. It would take her forever to pay that. Now if that's made part of the terms of the probation, she's going to be automatically ... she's not, she's going to be unable to do the terms of her probation.

(Tr. at 126–27.)

■ The above exchange was not a sufficient inquiry into Kays' ability to pay. The trial court did not to ask about additional assets or expenses Kays might have, though we note Kays was declared indigent at the beginning of the proceedings for the purpose of appointing pauper counsel.[4] Evidence of the amount of Kays' social security disability payment therefore does not, without more, demonstrate Kays would be able to pay restitution.

■ Moreover, as the trial court's limited questioning revealed Kays received social security disability income, we address *sua sponte* whether 42 U.S.C.A. § 407(a) precludes the trial court from considering social security income in determining Kays' ability to pay restitution.

42 U.S.C.A. § 407(a), which applies to both Social Security Disability benefits and Supplemental Security Income, provides in relevant part:

> The right of any person to any future payment under this subchapter [Assignment of Social Security and Supplemental Security Benefits] shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process[.]

We must, therefore, determine if an order to pay restitution is an "other legal process" under 42 U.S.C.A. § 407(a). This is an issue of first impression in the criminal context in Indiana; thus, we look to the decisions of other jurisdictions for guidance.

We first note the Social Security Administration's Program Operations Manual System (POMS) defines "legal process" for the purpose of 42 U.S.C.A. § 407 as "the means by which a court (or agency or official authorized by law) compels compliance with its demand; generally, it is a court order."[5] POMS § GN 02410.001, https://secure.ssa.gov/apps10/poms.nsf/lnx/0202410001 (last accessed February 18, 2011). The United States Supreme Court,

---

PSI contained information about Kays' income, assets, or ability to pay that may have impacted the trial court's decision.

4. That the trial court found Kays indigent for purposes of appointing pauper counsel does not necessarily mean the trial court abused its discretion in ordering restitution. *See Mitchell v. State*, 559 N.E.2d 313, 314–15 (Ind.Ct. App.1990) (holding eligibility for indigent counsel and imposition of restitution "are very different" determinations, such that a

defendant with pauper counsel may be ordered to pay restitution "in a manner ... just to both parties"), *trans. denied.*

5. The Social Security Administration's Program Operations Manual System (POMS) is the "primary source for information used by Social Security employees to process claims for Social Security benefits." *See* https://secure.ssa.gov/apps10/poms.nsf/Home?readform (last accessed February 18, 2011).

citing POMS, has defined "other legal process" as a

> process much like the processes of execution, levy, attachment, and garnishment, and at a minimum, would seem to require utilization of some judicial or quasi-judicial mechanism, though not necessarily an elaborate one, by which control over property passes from one person to another in order to discharge or secure discharge of an allegedly existing or anticipated liability.

*Washington State Dept. of Soc. and Health Servs. v. Guardianship Estate of Keffeler,* 537 U.S. 371, 385, 123 S.Ct. 1017, 154 L.Ed.2d 972 (2003).

The Montana Supreme Court, also citing POMS, held restitution was an "other legal process," so social security income could not be considered in the assessment of a defendant's ability to pay restitution. *State v. Eaton,* 323 Mont. 287, 99 P.3d 661, 666 (2004) (restitution order is "an improper attempt to subject Eaton's social security benefits to 'other legal process' "). West Virginia has held the same. *See In re: Michael S.,* 206 W.Va. 291, 524 S.E.2d 443, 447 (1999) (pursuant to 42 U.S.C.A § 407, court may not order restitution to be paid from future supplemental security income benefits because benefits are not subject to execution, levy, attachment, garnishment, or other legal process).[6]

■ In Indiana, crime victims may obtain compensation for pecuniary losses in two ways—they may file civil actions for damages, and/or the trial court may order restitution. *See* Ind.Code § 35–50–5–3(e)(1), (2) (order of restitution does not bar a civil action for "(1) damages that the court did not require the person to pay to the victim under the restitution order but arise from an injury or property damage that is the basis of restitution ordered by the court; and (2) other damages suffered by the victim."); *see also Haltom v. State,* 832 N.E.2d 969, 971 (Ind.2005) (while a trial court is permitted to consider the amount of a civil settlement stemming from an action that is the subject of a criminal prosecution, it is not required to do so). Personal injury damages may be assessed to "award or impose a pecuniary compensation, recompense or satisfaction for an injury done or wrong sustained by a party." *Ind. Univ. v. Ind. Bonding & Sur. Co.,* 416 N.E.2d 1275, 1288 (Ind.Ct. App.1981), *reh'g denied.* The purpose of a restitution order is "to impress upon the criminal defendant the magnitude of the loss he has caused and to defray costs to the victims caused by the offense." *Carswell v. State,* 721 N.E.2d 1255, 1259 (Ind. Ct.App.1999).

The statute governing restitution likens an order of restitution to a "judgment lien in a civil proceeding." Ind.Code § 35–50–5–3(b). In *Brosamer v. Mark,* 540 N.E.2d 652, 653 (Ind.Ct.App.1989), we held 42 U.S.C.A. § 407(a) prohibited social security proceeds from being used to satisfy a

---

**6.** During oral argument, the parties cited two cases from the Seventh Circuit Court of Appeals, *U.S. v. Eggen,* 984 F.2d 848 (7th Cir. 1993) and *U.S. v. Lampien,* 1 Fed.Appx. 528 (7th Cir.2001). We find both distinguishable, based on the unusual nature of the facts therein. In *Lampien,* the court held the issue was waived in regards to 42 U.S.C.A. § 407, and affirmed the district court's decision to include Lampien's projected social security benefits, in addition to her pension and prospective rental income, when determining her ability to pay restitution. *Id.* at 533 fn. 3. In *Eggen,* the court affirmed the district court's decision to revoke Eggen's probation because Eggen's payment of lump sum retroactive social security benefits to his parents rather than restitution victims constituted a failure to make a good faith effort to pay restitution. *Eggen,* 984 F.2d at 850. There is no indication the district court considered Eggen's social security benefits when determining his ability to pay restitution prior to his probation revocation.

civil judgment. The "exemption applies even after the benefits are received by the debtor and placed in a bank account." [7] *Id.* Therefore, we find decisions from those jurisdictions that recognize restitution as an "other legal process" under 42 U.S.C.A. § 407(a) to be more consistent with Indiana precedent and hold social security income is to be excluded from consideration as a trial court determines a defendant's ability to pay restitution. This approach comports with the purpose of social security benefits, which is to "assure that the recipient's income is maintained at a level viewed by Congress as the minimum necessary for the subsistence of that individual." *Cox v. Cox,* 654 N.E.2d 275, 277 (Ind.Ct.App.1995).

Because the trial court did not adequately inquire into Kays' ability to pay restitution, and as restitution may not be based on social security income, we reverse its decision and remand for a hearing regarding Kays' ability to pay. We direct the trial court on remand to ignore Kays' social security income as it determines her ability to pay restitution.

b. *Manner and Time of Payment*

■ When ordering restitution, the trial court must "fix the manner of performance." Ind.Code § 35–38–2–2.3(a)(5). The trial court did not adequately indicate the period of time in which Kays was required to pay restitution, nor did it set a schedule of payments.

During the sentencing hearing, the State argued:

> The reason of restitution, Your Honor, is to make the victim whole, as best as possible. Reducing a judgment is going to do nothing more than to delay that. We can enter it into or she can enter it

into a payment program, which is, that she can afford to pay, and if it takes longer than her probation, as the court knows, we've been known to come back to Court and extend probation for the very purpose of receiving that restitution and no other reasons.

(Tr. at 127–28.) The trial court stated, "a valid amount of restitution, $1,496.15 is still valid.... The Court understands that [Kays] may stretch that out over a period of time." (*Id.* at 132.) The court later indicated the restitution "is going to have to be dealt with between the Defendant and probation over this probationary period and they'll have to make some determinations then. Spread out over 12 months would be, some $220.00 a month, so we'll see how that goes." (*Id.* at 135–36.) The court's order stated, "The Defendant shall pay the restitution owed in this matter in the sum of $1,496.15. These amounts shall be paid through the clerk of the Knox Superior Court 2." (App. at 30.)

The State correctly concedes the trial court did not comply with Ind.Code § 35–38–2–2.3(a)(5). *See Savage v. State,* 655 N.E.2d 1223, 1225 (Ind.1995) (finding reversible error where the trial court did not "incorporate in its restitution order a periodic payment amount that [the defendant] can or will be able to afford"). We accordingly remand for the trial court to determine the manner of payment of restitution.

2. *Computation of Damages*

■ Because we remand for the court to reevaluate Kays' ability to pay and to set a time and manner of payment, we *sua sponte* ask the court to consider whether it

7. We also have held Supplemental Security Income may not be used in the computation of income for the purpose of determining child support responsibilities, but that decision was not based on 42 U.S.C.A § 407(a). *Cox v. Cox,* 654 N.E.2d 275, 277 (Ind.Ct.App. 1995).

needs to reevaluate Wolfe's damages.[8] Wolfe submitted a hospital bill for $1496.15, which she claimed included charges for treatment of a "laceration and bruising" to her leg, (Tr. at 23), and "a follow up visit to have the stitches removed." (*Id.*) The trial court ordered Kays to pay that amount.

A trial court "shall base its restitution order upon a consideration of ... medical and hospital costs incurred by the victim (before the date of sentencing) as a result of the crime." Ind.Code § 35–50–5–3(a). "Only actual costs incurred by the victim" may be recovered as restitution. *Kellett v. State*, 716 N.E.2d 975, 980 (Ind. Ct.App.1999) (involving an order for unreimbursed medical expenses). Thus, if an insurance company pays a portion of a crime victim's expenses, the trial court must deduct those payments from the amount of restitution due to the victim. *Shane v. State*, 769 N.E.2d 1195, 1200–01 (Ind.Ct.App.2002).

In *Shane,* we reversed a restitution order because discrepancies in the record made it difficult to determine whether Shane was ordered to reimburse the victim for amounts the victim's insurance company had already paid. In the case before us it is similarly unclear from the record provided to us whether Wolfe's hospital bill reflected expenses she in fact was required to pay, or merely stated the original amount billed to her insurance company. *See supra* n. 3.

In addressing how much a tortfeasor should pay to reimburse a party injured in an automobile accident, our Indiana Supreme Court recently discussed why "[t]he collateral source statute [Ind.Code § 34–44–1–2] does not bar evidence of discounted amounts in order to determine the reasonable value of medical services" provided to the victim:

> The complexities of health care pricing structures make it difficult to determine whether the amount paid, the amount billed, or an amount in between represents the reasonable value of medical services. One authority reports that hospitals historically billed insured and uninsured patients similarly. Mark A. Hall & Carl E. Schneider, *Patients As Consumers: Courts, Contracts, and the New Medical Marketplace,* 106 Mich. L.Rev. 643, 663 (2008). With the advent of managed care, some insurers began demanding deep discounts, and hospitals shifted costs to less influential patients. *Id.* This authority reports that insurers generally pay about forty cents per dollar of billed charges and that hospitals accept such amounts in full satisfaction of the billed charges. *Id.*
>
> As more medical providers are paid under fixed payment arrangements, another authority reports, hospital charge structures have become less correlated to hospital operations and actual payments. The Lewin Group, A Study of Hospital Charge Setting Practices i (2005). Currently, the relationship between charges and costs is "tenuous at best." *Id.* at 7. In fact, hospital executives reportedly admit that most charges have "no relation to anything, and certainly not to cost." Hall, *Patients As Consumers* at 665. Thus, based on the

---

**8.** As part of its order, the trial court also indicated Kays and Wolfe agreed to share equally the cost of erecting a six foot privacy fence between their properties. The trial court did not label as restitution the cost of half of the fence; however, the trial court ordered Kays to pay that undisclosed amount to the Clerk of Knox Superior Court. The order does not indicate the amount Kays was to pay for the fence, nor does it set a manner of payment. Thus, on remand, we direct the trial court to specify the amount and manner of satisfying this voluntarily-assumed obligation.

realities of health care finance, we are unconvinced that the reasonable value of medical services is necessarily represented by either the amount actually paid or the amount stated in the original medical bill.

*Stanley v. Walker,* 906 N.E.2d 852, 857 (Ind.2009) (footnote omitted), *reh'g denied.*

We believe the *Stanley* reasoning should be applied to criminal restitution orders to ensure victims are compensated only for their actual losses. As explained in *Stanley,* a restitution amount based on a hospital bill, without any indication of the amount paid by the victim or her insurance company, or the amount written off by the hospital, might overcompensate the victim, in violation of Ind.Code § 35–50–5–3(a)(2). *Stanley,* 906 N.E.2d at 856.

Nevertheless, the portions of the record provided to us in this appeal include only the original hospital bill. We do not know if there was other evidence presented to the trial court regarding the amount Wolfe actually paid to the hospital, excluding any portion paid by or adjusted for insurance, and not just the amount billed by the hospital. Therefore, on remand, we direct the trial court to determine whether the evidence submitted at trial included other documentation or testimony regarding Wolfe's "actual cost" and, if so, to recalculate Wolfe's damages prior to assessing what amount Kays is able to pay.

## CONCLUSION

We reverse the order of restitution because the court did not adequately inquire into Kays' ability to pay restitution and did not set a manner of payment as required by Ind.Code § 35–38–2–2.3(a)(5). On remand, we direct the trial court not to consider Kays' social security benefits when determining her ability to pay, and

to ensure order reflects the amount Wolfe actually paid for the medical services.

Reversed and remanded.

ROBB, C.J., and RILEY, J. concur.