**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 24 2012, 8:45 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOHN J. SCHWARZ II**
Hudson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE: LEVI JACOB LOUCKS TESTIMONIAL TRUST and JAMES M. LOUCKS, Trustee, | ) | |
| | ) | |
| ANGEL M LEPLEY, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 17A04-1107-TR-386 |
| | ) | |
| LEVI J. LOUCKS, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE DeKALB SUPERIOR COURT
The Honorable Monte L. Brown, Judge
Cause No. 17D02-1011-TR-3

**February 24, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

Angel Lepley sued Levi Loucks to obtain child support. The trial court denied her access to the principal funds of the Levi Jacob Loucks Testimonial Trust (the Trust) for the payment of child support, and denied her request for attorney's fees she incurred in her attempt to collect child support. We affirm.

## FACTS AND PROCEDURAL HISTORY

In 1990, Levi's father, Rick, executed a will directing that on his death, trusts would be established for his children, Levi and Jasmin. The trusts would exist "to provide funds for higher education after each child has completed high school . . . including all necessary maintenance and educational expenses." (App. at 9.) Levi and Jasmin would each receive the principal of their respective trusts when each reached age thirty. The Trust was created in 1993.

On May 29, 2007, the court established Levi's paternity of T.L., Angel's child. The court granted Angel primary custody of T.L. and ordered Levi to pay $82.00 per week in child support. In 2008, the child support amount was increased to $108.00. Levi intermittently paid child support, but not weekly as required. On June 19, 2008, the court noted a child support arrearage of "at least $2,536.00," (*Id.* at 29), and ordered Levi to pay an additional $22.00 per week to reduce the arrearage. The court also ordered Levi to pay Angel's attorney's fees.

On March 1, 2011, Angel petitioned for release of $9,001.26 from the Trust for payment of the child support arrearages and her attorney's fees. Levi and the trustee objected to the disbursement, and the trial court held a hearing on April 20. Angel presented evidence

the child support arrearage was $5,014.71 and her attorney's fees to date totaled $4,463.49. The trial court denied her request, finding: "[W]hile this Court is not insensitive to and is in fact sympathetic with [Angel]'s request, this Court can find no Indiana precedential authority permitting a child support recipient to invade a testamentary trust containing protective provisions and which trust does not provide for periodic distribution." (*Id*. at 5.)

## DISCUSSION AND DECISION

Levi did not file a brief. When an appellee does not submit a brief, we do not undertake the burden of developing arguments for that party. Instead, we apply a less stringent standard of review and may reverse if the appellant establishes *prima facie* error. *Thurman v. Thurman*, 777 N.E.2d 41, 42 (Ind. Ct. App. 2002). *Prima facie* error is "error at first sight, on first appearance, or on the face of it." *Van Wieren v. Van Wieren*, 858 N.E.2d 216, 221 (Ind. Ct. App. 2006). Still, we are obliged to correctly apply the law to the facts in the record to determine whether reversal is required. *Dominiack Mechanical, Inc. v. Dunbar*, 757 N.E.2d 186, 188 n.1 (Ind. Ct. App. 2001).

Angel acknowledges the question whether the Trust funds may be used to pay outstanding child support and attorney's fees is a pure question of law because the underlying facts are not in dispute. We agree. When an issue is a pure question of law, we review the lower court's decision *de novo*. *Bader v. Johnson*, 732 N.E.2d 1212, 1216 (Ind. 2000). A pure question of law is one that requires neither reference to extrinsic evidence, the drawing of inferences therefrom, nor the consideration of credibility questions for its resolution. *Id*. (citing 4A Kenneth M. Stroud, Indiana Practice § 12.3 at 134 (2d ed.1990)).

3

At trial, both parties agreed the Trust is a "spendthrift trust." A "spendthrift trust" is "one in which the beneficiary is unable to transfer, assign, or alienate his right to future payments of income or principal, and which provides the beneficiary's creditors are unable to subject the beneficiary's interest to the payment of their claims while in the hands of the trustee." *Brosamer v. Mark*, 540 N.E.2d 652, 654-55 (Ind. Ct. App. 1989), *aff'd*, 561 N.E.2d 767 (Ind. 1990). *See also* Ind. Code § 30-4-3-2 ("The settlor may provide in the terms of the trust that the interest of a beneficiary may not be either voluntarily or involuntarily transferred before payment or delivery of the interest to the beneficiary by the trustee.").

Interpreting Indiana law, a United States District Court explained:

> There are three requirements for a trust to be a spendthrift trust. First, the settlor may not be a beneficiary of the trust. Second, the beneficiary must not have any present dominion or control over the plan corpus. Third, the trust must contain an anti-alienation clause which prevents the beneficiary from voluntarily or involuntarily transferring his interest in the trust.

*United States v. Grimm*, 865 F. Supp. 1303, 1311 (N.D. Ind. 1994). *See also* Ind. Code § 30-4-3-2 (listing requirements for restraint on transfer of a beneficiary's interest in a trust).

In support of her argument the Trust funds may be used to pay child support and her attorney's fees, Angel cites *Clay v. Hamilton*, 116 Ind. App. 214, 63 N.E.2d 207 (1945). Clay, as trustee of the Earl Higgins Trust, appealed the lower court's order that Higgins pay his ex-wife alimony from the annual income he received from the trust. Clay argued the trust was a spendthrift trust for the support of Higgins, so the funds could not be used to pay alimony. Clay characterized Higgins' relationship to his ex-wife as akin to that of a debtor to a creditor, and his debt could not be paid from the funds of the trust.

4

We disagreed, holding once Higgins received income from the trust, there were no restrictions on how he spent it. Thus, we reasoned, the alimony Higgins owed could be paid from the amount he received annually; the money paid would not affect the corpus of the trust. In so holding, we adopted § 157 of the Restatement of the Law of Trusts: "Although a trust is a spendthrift trust or a trust for support, the interest of the beneficiary can be reached in satisfaction of an enforceable claim against the beneficiary, (a) by the wife or child of the beneficiary for support, or by the wife for alimony[.] *Clay*, 116 Ind. App. at 214, 63 N.E.2d at 211.

Angel argues Section 157 of that Restatement and the *Clay* holding permit her to receive child support payments and attorney's fees from the Trust. However, *Clay* is distinguishable.

In *Clay*, the trustee paid Higgins a yearly income derived from the profit of the farm Higgins received in his father's will. The will dictated the corpus of the trust was to be used to support Higgins, and only the income from the farm was to be disbursed to him without restriction.

The Loucks will, by contrast, dictated the Trust was to provide "funds for higher education . . . including all necessary maintenance and educational expenses," (App. at 9), for Levi. Levi would receive all funds in the Trust once he was thirty. The will provided, "No interest in any Trust created by this Instrument shall be transferable or assignable by any beneficiary, or be subject during their lives to the claims of their creditors, including alimony claims." (*Id.*)

5

At the time of the proceedings appealed here, Levi was twenty-eight years old, so he had not received unrestricted income from the trust. The record indicates there had been one disbursement from the trust to pay for Levi's defense in a criminal trial, but no money had been distributed to Levi personally, and he had no discretion over the use of the money in the trust. As Levi had yet to receive income from the trust, *Clay* does not permit child support or Angel's attorney's fees payments from the Trust principal. We affirm the decision of the lower court.

Affirmed.

CRONE, J., and BROWN, J., concur.